FILED
United States Court of Appeals
Tenth Circuit

June 6, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JASON NATHANIEL HOLLAND,

Petitioner-Appellee,

v.

JOE ALLBAUGH, Interim Director,[*]

Respondent-Appellant.

No. 14-5127

### APPEAL FROM THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA
### (D.C. NO. 4:11-CV-00277-GKF-FHM)

Keeley L. Miller, Assistant Attorney General (E. Scott Pruitt, Attorney General, and Jay Schniederjan, Assistant Attorney General, on the briefs) Office of the Attorney General, Oklahoma City, Oklahoma, for Respondent-Appellant.

Barry L. Derryberry, Research and Writing Specialist (Julia L. O'Connell, Federal Public Defender, and Chance Cammack, Research and Writing Specialist, with him on the brief) Office of the Federal Public Defender for the Northern District of Oklahoma, Tulsa, Oklahoma, for Petitioner-Appellee.

Before **TYMKOVICH**, Chief Judge, **BALDOCK**, and **HARTZ**, Circuit Judges.

**TYMKOVICH**, Chief Judge.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Joe Allbaugh is substituted for Robert Patton as the respondent in this case.

Jason Holland and his brother were accused of robbing a driver of her purse on a rural Oklahoma highway, and then unlawfully entering a home after their getaway car had a flat tire. At a joint trial, the state court allowed, as relevant here, two pieces of evidence to be introduced: (1) one of the victims' statements that she saw Holland had Nazi tattoos on his arm, and (2) the other victim's statement that she heard Holland's brother confess to the robbery by saying "I did it. I did it. We don't associate with black guys." This evidence was admitted without objection and both brothers were convicted of the crimes.

After his convictions became final on state direct review, Holland brought in federal court a petition for habeas relief under 28 U.S.C. § 2254. The district court granted relief on two grounds: (1) the introduction of the above evidence at trial deprived Holland of a fundamentally fair trial, and (2) Holland's trial counsel's failure to object to the evidence deprived him of constitutionally effective assistance of counsel.

Applying the deferential standard of review contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the holding of the Oklahoma Court of Criminal Appeals (OCCA), we conclude that the OCCA did not unreasonably apply Supreme Court law in finding that the evidence did not substantially affect the outcome of the trial.

We therefore REVERSE the district court's grant of habeas relief.

# I. Background

### A. *Factual Background*

While driving into Miami, Oklahoma, on South 550 Road, Mona Lester saw a car make a partial U-turn and come to a stop near her vehicle. The driver, later identified as Holland, got out of his vehicle and approached Ms. Lester's passenger door. Ms. Lester lowered the passenger window a few inches and asked if Holland needed anything. Holland responded, "Yeah, I need that purse." Holland grabbed the purse, returned to his car, and drove west away from the scene. Ms. Lester initially chased Holland's vehicle westward. During the chase she managed to note Holland's license plate number and spot a second man sit up in the back seat of the vehicle.

About thirty minutes later, a second encounter occurred. Carrie Stotts heard a noise coming from the road in front of her home and saw a vehicle approaching her driveway. She later identified the car as Holland's. The vehicle had a flat tire. The vehicle pulled into Ms. Stotts's driveway and two men left the car. The second man was later identified as Holland's brother and co-defendant, Jeremy Holland.[1] Ms. Stotts testified that the brother was driving at this time. Holland asked for tools to change the tire, and to use Ms. Stotts's cell phone.

---

[1] We refer to Petitioner Jason Holland as "Holland" and Jeremy Holland as the "co-defendant" or the "brother" to avoid confusion. Only Jason Holland's habeas petition is on appeal here.

After Holland used the phone, Ms. Stotts re-entered her home through the side door, locking it behind her. She later testified she locked the door because she "was kind of scared and afraid . . . they didn't have any shirts on, and they—one of them had visible Nazi tattoos." App., Vol. I at 279. Even so, Ms. Stotts soon found the two men had come in through the front door into her living room. In response to her telling them to leave, one of the men said, "We'll get you."

Ms. Stotts called the police, who quickly located and apprehended Holland and his brother at her house. Ms. Lester was brought to the scene and identified Holland as the man who had robbed her. When asked if she could identify Holland's brother, Ms. Lester later testified: "I thought it was a black guy in the back seat of the car. All I seen was the bald head and that's what I thought. And I said but there was a black guy. And that's when [Holland's brother] said, 'I did it, I did it. We don't associate with black guys.'" *Id.* at 259–62. Holland's counsel did not object to any of this testimony. The jury convicted Holland of robbery and unlawful entry.

### B. Procedural Background

After his conviction and sentence, Holland filed a direct appeal to the OCCA, alleging eight propositions of error. The OCCA denied relief in a summary opinion. As relevant here, the OCCA found the testimony concerning the tattoos and the brother's statement ("We don't associate with black guys.") "properly admissible as part of the *res gestae* of the offenses." *Id.* at 217. As to

-4-

the confession, the OCCA found that while "error occurred when the trial court omitted to give a limiting instruction upon the jury's use of the Co-Defendant's statement ['I did it.  I did it.']," no prejudice had resulted from the error.  *Id.* at 220.  Reviewing under the standard established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the OCCA denied the ineffective assistance of counsel claim.

Holland then filed a petition for habeas relief under 28 U.S.C. § 2254 in the Northern District of Oklahoma.  The district court granted relief on two grounds.  First, the court concluded that the introduction at trial of the co-defendant's statement, "I did it, I did it.  We don't associate with black guys," and Ms. Stotts's testimony regarding Holland's Nazi tattoos deprived Holland of a fundamentally fair trial in violation of due process because the evidence was both prejudicial and irrelevant.  The court also found counsel's failure to object to these statements constituted ineffective assistance of counsel, both because the evidence was inflammatory and because the confession violated Holland's Confrontation Clause rights.

Applying the deferential AEDPA standard, the district court found the introduction of the two statements resulted in a "fundamentally unfair trial in violation of" Holland's due process rights and his right to effective counsel.  App., Vol. II at 45.  The district court found the OCCA's denial of relief "contrary to, or an unreasonable application of" clearly established Supreme

Court law because the introduction of the evidence prejudiced Holland by "impacting the jury's sentencing recommendation." *Id.* at 46. The court also found that counsel's failure to object constituted ineffective assistance of counsel, and the OCCA's finding of no prejudice was "contrary to, or an unreasonable application of" the Supreme Court's decision in *Strickland*.

## II. Analysis

The government contends that the district court should not have granted habeas relief. It argues that the OCCA did not misapply federal due process or Sixth Amendment law in upholding Holland's convictions. We agree. We start with the well-settled provisions of AEDPA, which govern our review of the OCCA's denial of Holland's claims of constitutional error.

### A. AEDPA Standard of Review

When a state court decides a claim on the merits, a federal habeas petitioner is entitled to relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *see Wilson v. Sirmons*, 536 F.3d 1064, 1074 (10th Cir. 2008). We presume a state court's factual findings are correct unless the petitioner rebuts them by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006).

-6-

We review a district court's factual findings for clear error and its legal conclusions de novo. *Bland*, 459 F.3d at 1009. Our review is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Federal courts may not "extract clearly established law from the general legal principles developed in factually distinct contexts," *House v. Hatch*, 527 F.3d 1010, 1017 n.5 (10th Cir. 2008), and Supreme Court holdings "must be construed narrowly and consist only of something akin to on-point holdings," *id.* at 1015. The "legal rule . . . need not have had its genesis in the closely-related or similar factual context" but "the Supreme Court must have expressly extended the legal rule to that context." *Id.* at 1016. Our inquiry ends if no clearly established law exists. *Id*. at 1018.

Our application of § 2254(d) begins by determining whether "the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland*, 459 F.3d at 1009. If so, we then ask whether "the state court decision was 'contrary to' or an 'unreasonable application of' that clearly established federal law." *Id.* A decision is "contrary to" clearly established federal law if "the state court applies

-7-

a rule that contradicts the governing law set forth" in Supreme Court cases or if "the state court confronts a set of facts that are materially indistinguishable" from a Supreme Court decision "and nevertheless arrives at a result different from" the result reached by the Supreme Court. *Id.*

A decision involves an "unreasonable application" of federal law if the state court "identifies the correct governing legal principle" but "unreasonably applies that principle to the facts." *Id.* We will only grant relief if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). When determining the "reasonableness" of the state court's application of clearly established federal law, a more general rule of law will allow for more reasonable applications than a narrow one. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). The Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (per curiam) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)).

We now address the district court's two grounds for granting habeas relief.

**B. Due Process**

The first basis for relief centers on the OCCA's evaluation of the trial court's unobjected-to admission of (1) the statement by the brother suggesting racial animus, and (2) Ms. Stotts's testimony that she observed Nazi tattoos on Holland's arm. Relying on *Payne v. Tennessee*, 501 U.S. 808 (1991), the district court found the OCCA misapplied clearly applicable law in failing to find the evidence violated Holland's right to a fair trial.

In *Payne*, the Supreme Court considered whether the Eighth Amendment categorically bars victim impact statements in capital cases. 501 U.S. at 829. The *Payne* decision overruled the Court's previous decision in *Booth v. Maryland*, 482 U.S. 496 (1987), which had barred the introduction of all victim impact statements during the penalty phase of a capital trial. *Id.* at 830. *Payne* concluded that, contrary to *Booth*, the Eighth Amendment "erects no *per se* bar" to the introduction of such statements. *Id.* at 827. The case turned primarily on the interpretation and application of the Eighth Amendment, not the Due Process Clause. The court did, however, insert one caveat into its holding, stating that when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." *Id.* at 825. Thus, the decision allows for the possibility that some victim impact statements will be so unfairly prejudicial, that their introduction will violate the Constitution notwithstanding the Eighth Amendment. We have cited this part of the *Payne* decision in a number of capital

cases. *See, e.g.*, *Lockett v. Trammell*, 711 F.3d 1218, 1235 (10th Cir. 2013) (quoting *Payne*, 501 U.S. at 825); *Ochoa v. Workman*, 669 F.3d 1130, 1144 (10th Cir. 2012) (quoting *Payne*, 501 U.S. at 825). But even in those cases we have never granted habeas relief where substantial evidence supported the jury's verdict. Although we have applied *Payne* in several unpublished cases outside the capital context, *see, e.g.*, *Rodriguez v. Roberts*, 371 F. App'x 971, 975 (10th Cir. 2010), we did so by emphasizing *Payne* applies only in "extreme cases."

*Payne* is not an "on-point" holding with respect to Holland's claims. While a Supreme Court case need not be factually identical, it must bear some resemblance to the case at hand. And we may not "extract clearly established law from the general legal principles developed in factually distinct contexts," *House*, 527 F.3d at 1017 n.5. *Payne*'s oft-quoted sentence—that the Due Process Clause "provides a mechanism for relief" when "evidence is introduced that is so unduly prejudicial that it renders the trial fundamentally unfair"—can be fairly characterized as a "general legal principle." And, as discussed above, *Payne* involved a "factually distinct context"—victim impact statements in a capital case.

*Payne* thus does not clearly establish the applicable legal framework for wrongfully-admitted trial evidence.[2] The OCCA's decision thus was not

---

[2] We also note that the Ninth Circuit has gone so far as to hold no clearly established Supreme Court law exists with respect to evidentiary claims at all.

(continued...)

"contrary to" *Payne*'s broad legal principle, nor was it "diametrically different" or "mutually opposed" to *Payne*. *Bland*, 459 F.3d at 1009. In short, the OCCA did not err in failing to recognize *Payne*, or apply it to the trial court's evidentiary rulings.

Even for clearly established law, however, AEDPA allows a grant of habeas only when the state court's application of that law is "unreasonable." So if we agreed *Payne* clearly established a broad rule—that the introduction of evidence violates the Due Process Clause when it "is so unduly prejudicial that it renders the trial fundamentally unfair"—Holland is still not entitled to relief because the OCCA's decision was not an "unreasonable application" of *Payne*'s broad holding. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. Thus, a habeas petitioner will have a harder time showing the state court's application of the rule was "unreasonable" when the rule is so broad that "fairminded jurists," *Harrington*, 562 U.S. at 102, might disagree as to its application. If *Payne* clearly establishes any rule at all, it must be a broad one. The OCCA's holding falls within the acceptable range of applications of this broad rule. While the district

[2](...continued)
*See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) ("[The Supreme Court] has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.").

court found the admitted evidence was wholly irrelevant to the prosecution's case, we think fairminded jurists could disagree, for several reasons.

First, the statement ("I did it. I did it. We don't associate with black guys.") reveals the brother is obviously racially biased—but it also tends to show that Ms. Lester's belief she had seen a black man in the back of the car was mistaken. Instead, the statement tends to show she had likely seen the brother, a conclusion supported by the brother's admission, and the testimony of other witnesses and Holland himself.

Second, the testimony of Ms. Stotts ("One of them had Nazi tattoos") is similarly relevant. While not particularly probative, the OCCA could reasonably conclude that the statement lends credibility to Ms. Stotts's testimony that she did not give the two men permission to enter her home, a fact of importance at trial. Lack of permission to enter is an element of unlawful entry, Okla. Stat. tit. 21, § 1438(B) (illegal entry) (requiring that entry be "without the permission of the owner or occupant"). Holland's defense was that he had permission to enter the home to use the phone. The OCCA did not unreasonably conclude that the evidence—that Ms. Stotts refused to give permission for two strangers, one shirtless with Nazi tattoos, to enter her house—had some probative value that was not outweighed by its prejudicial effect.

According to the OCCA: "The challenged testimony was properly admissible as part of the *res gestae* of the offenses"; was "relevant as it tended to

prove the requisite elements of the offenses," namely that the brother was an active participant in the robbery and illegal entry; and its "probative value was not substantially outweighed by its prejudicial effect." App., Vol. I at 217.

Given the relevance of the statements to the charges and the debateability of their prejudicial impact in light of all of the evidence, Holland cannot show the OCCA was wrong in concluding their admission did not render his trial "fundamentally unfair." *See Lott v. Trammell*, 705 F.3d 1167, 1193–94 (10th Cir. 2013) ("[A] review of the state court record indicates that [defendant]'s trial was not rendered fundamentally unfair by the admission of the [potentially prejudicial] evidence. . . . [T]he prosecution's evidence of [defendant]'s guilt . . . was overwhelming."); *cf. Wilson v. Sirmons*, 536 F.3d 1064, 1115 (10th Cir. 2008) (finding that no violation of due process occurred in a capital case, in part because gruesome photographs were relevant and probative). And, more importantly, he cannot show that no fairminded jurist could agree with the OCCA's decision.

In sum, the OCCA's holding that no due process violation occurred was not contrary to, or an unreasonable application of, *Payne*.

### C. Ineffective Assistance of Counsel

In addition to the due process violation warranting relief, the district court also found two instances of ineffective assistance of counsel: First, trial counsel's failure to object to the introduction of the tattoo and racial evidence discussed

above; and second, trial counsel's failure to object to the introduction of the co-defendant's confession. We find neither instance warrants relief.

### 1. Applicable Legal Framework

To prove ineffective assistance of counsel under *Strickland*, a petitioner must show (1) that trial counsel's performance was deficient, *i.e.*, that he "fell below an objective standard of reasonableness," 466 U.S. at 688; and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. In assessing whether counsel's performance was deficient, we must free ourselves from the "distorting effects of hindsight" by indulging in a strong presumption that counsel acted reasonably. *Id.* at 689. Thus, counsel's performance is not deficient as long as it "falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The second prong of the *Strickland* test "asks whether it is 'reasonably likely' the result would have been different" had counsel acted differently. *Harrington*, 562 U.S. at 111 (quoting *Strickland*, 466 U.S. at 696). This mirrors the harmless error test established in *Brecht v. Abrahamson*, 507 U.S. 619 (1993): "[A]pplying the [*Brecht*] harmless-error test is a needless formality in the context of a *Strickland* claim, which itself demands a showing that the alleged deficiency was prejudicial." *Byrd v. Workman*, 645 F.3d 1159, 1167 n.9 (10th Cir. 2011).

Finally, our review of a state court's denial of an ineffective assistance of counsel claim on the merits is "doubly deferential." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quoting *Cullen*, 563 U.S. at 190). Thus, we ask "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. At bottom, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102.

### 2. *Failure to Object to the Admission of Prejudicial Evidence*

Holland's first ineffectiveness of counsel claim parallels the discussion above. He contends that because the introduction of the prejudicial statements violated his due process rights or was otherwise unlawful, trial counsel was ineffective under *Strickland* for failing to object to their admission.

Reviewed under AEDPA's deferential standard, the OCCA's decision did not unreasonably apply *Strickland* in finding no constitutional ineffectiveness.

First, as discussed above, the OCCA reasonably concluded that the evidence could be properly admitted as part of the "res gestae" of the offenses. The statements were relevant to several findings necessary for conviction. Second, and similarly, the evidence tended to prove certain elements—such as the brother's involvement in the conjoint robbery and lack of permission to enter Ms. Stotts's home—of the charged crimes. And third, the OCCA reasonably concluded that the statements' probative value—in light of their relevance to the

-15-

elements of the crimes—outweighed their prejudicial effect. In sum, the OCCA did not unreasonably apply *Strickland* in concluding that counsel was not ineffective.

### 3. *Failure to Object to the Brother's Confession*

Holland also contends the OCCA misapplied *Strickland* by finding the admission of his brother's confession was not prejudicial. He argues the confession violated his constitutional right to confront witnesses against him because his brother did not testify at trial. The district court agreed, concluding the error had a "substantial and injurious effect" in determining the jury's verdict, and thus was prejudicial to Holland.

Holland was convicted of violating an Oklahoma statute criminalizing "conjoint robbery." That crime carries a higher minimum sentence than standard second-degree robbery for those, like Holland, previously convicted of two or more felonies.[3] The parties dispute whether a Confrontation Clause violation

---

[3] The district court noted that the actual punishments for the two crimes are the same. *See* Okla. Stat. tit. 21, § 51.1(B) ("Every person who, having been twice convicted of felony offenses, commits a subsequent felony offense . . . within ten (10) years of the date following the completion of the execution of the sentence, and against whom the District Attorney seeks to enhance punishment pursuant to this section of law, is punishable by imprisonment in the State Penitentiary for a term in the range of twenty (20) years to life imprisonment.").

But the government did not object to a jury instruction that stated the punishment for standard second-degree robbery as only four years to life. And it does not raise this argument as the appellant in this court. Thus, we accept the parties' apparent concession that the two crimes had different sentencing ranges.

occurred.[4]  For example, Holland alleges a violation occurred, agreeing with the district court, while the state argues the brother's statement was not "testimonial," and thus its introduction did not violate the Confrontation Clause, *see Crawford v. Washington*, 541 U.S. 36, 68 (2004).

The Confrontation Clause states that "the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI; *see also Crawford*, 541 U.S. at 42.  In *Crawford*, the Court concluded testimonial statements from absent witnesses may be "admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine."  *Crawford*, 541 U.S. at 59.

Even assuming, however, that admission of the confession violated the Confrontation Clause, we find Holland cannot show the OCCA's prejudice analysis should be overturned under AEDPA's deferential standard.

Because this is a petition for habeas relief, we ask whether the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht*, 507 U.S. at 623 (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).  This standard is "less onerous" than

---

[4]  The OCCA found the brother's statement was admissible because "it did not facially incriminate" Holland.  App., Vol. I at 219–20 (citing *Richardson v. Marsh*, 481 U.S. 200, 208–09 (1987)).  Nonetheless, in the following paragraph, the court stated that "error occurred" due to the lack of a limiting instruction following the introduction of the brother's statement.  We assume that the OCCA found some Confrontation Clause error occurred, but that it was ultimately harmless.

the one applied to claims of constitutional error reviewed on direct appeal: that the error be "harmless beyond a reasonable doubt." *Id.* at 622 (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

The prejudice inquiry here centers on the evidence linking the brother to the robbery. The district court found, and Holland reiterates on appeal, that no evidence presented at trial—aside from the disputed confession—could support the jury's conviction for conjoint robbery. But this disregards substantial evidence inculpating the brother. First, Ms. Lester testified she saw a man sit up in the back seat of Holland's vehicle as he fled. Later, Ms. Stotts saw Holland and the co-defendant drive up to her home. Together, these facts show the man Ms. Lester had seen in the back of the vehicle was likely the brother. Second, Ms. Lester's purse was eventually found on the north side of East Road 50, on which Holland and his brother had fled west. This tends to show the purse had been thrown out the passenger-side window by someone other than Holland, indicating the brother's involvement with the robbery and its aftermath. Third, items from the purse were found in the backseat, where Ms. Lester thought she saw one of the perpetrators sit up after the robbery. This indicates the brother rummaged through the purse before disposing of it. Finally, Ms. Stotts testified that the brother was driving the vehicle when it pulled up to her house shortly after the robbery. This shows the brother was actively involved in the getaway.

Against all this evidence, Holland testified at trial that his brother had slept through the entire ordeal.

A reasonable jurist could conclude from this evidence—even excluding the confession—that the brothers had driven together looking for someone to rob, driven away together, taken valuables out of the purse, and that Holland's brother had disposed of the purse out the right side of the car. In addition, combining the testimony of Ms. Lester and Ms. Stotts, the jury could have reasonably concluded that the "black guy" Ms. Lester thought she had seen in the vehicle was in fact the co-defendant who arrived with Holland at Ms. Stotts's residence. And, of course, the jury was free to disregard Holland's testimony as not credible, while believing Ms. Lester and Ms. Stotts's testimony. Taken together, there was substantial evidence to convict the pair of conjoint robbery even without the confession. The jury could have concluded that the brother had the "[d]esign to commit a crime or to commit acts the probable consequence of which are criminal." Jury Instruction No. 22 (definition of "aiding and abetting"), App., Vol. III at 139; *see also* Jury Instruction No. 21 ("A person concerned in the commission of a crime as a principal is one who knowingly and with criminal intent aids and abets in the commission of the offense."), App., Vol. III at 138.

Given this other evidence against the co-defendant, we conclude that fairminded jurists could agree with the OCCA's prejudice analysis under *Strickland.* Even if the admission of the confession violated the Confrontation

Clause, Holland cannot show the OCCA erred in finding no reasonable probability that its admission changed the result of the trial.  Because Holland has the burden of satisfying both *Strickland* prongs—and the added burden of AEDPA deference—he cannot show he is entitled to habeas relief.

## III.  Conclusion

The district court erred in granting Holland habeas relief.  Neither ground for relief can stand under the deferential review required by AEDPA.  We REVERSE the district court's grant of habeas relief and REMAND for further proceedings consistent with this opinion.