# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-70023

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2017

Lyle W. Cayce
Clerk

CHRISTOPHER YOUNG,

> Petitioner - Appellant

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

> Respondent - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, SMITH, and OWEN, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

After a Texas jury sentenced Christopher Young to death for the murder of Hasmukh Patel, he unsuccessfully challenged the constitutionality of his sentence in the Texas state courts and in the federal district court. We granted a certificate of appealability on two issues: (1) a *Mills*[1] claim that the omission of a jury instruction—required under Texas law—that jurors need not agree on what particular evidence they found mitigating created a substantial risk that the jurors may have mistakenly believed mitigating evidence needed to be

---

[1] *Mills v. Maryland*, 486 U.S. 367 (1988).

accepted unanimously and (2) that Young's trial counsel's failure to object to the missing instruction constituted ineffective assistance of counsel under *Strickland*.[2] We hold that the state courts' rejection of these claims was not "an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States."[3]

## I.

On the morning of November 21, 2004, Young forced his way into the apartment of Daphne Edwards, where she lived with her three young daughters.[4] Pressing a revolver to her head, he demanded money.[5] She gave him $28—all she had.[6] Young demanded Edwards undress.[7] When she did not do so fast enough, Young fired a shot into the ground at her feet.[8] He then sexually assaulted Edwards, with her girls nearby where he could keep an eye on them.[9] On leaving, he "walked over to the children and kissed each of them on the cheek and told them that their mommy would be back."[10]

Young then forced Edwards, still at gunpoint, into her red Mazda Protégé and had her drive to the front of the apartment complex.[11] At that point, Young decided he wanted to drive.[12] He exited the passenger side of the car, telling Edwards not to drive off or he would go back to the apartment and kill her daughters.[13] Circling around to the driver's side, Young ordered

---

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).
[3] 28 U.S.C. § 2254(d)(1) (2012).
[4] *Young v. State*, 283 S.W.3d 854, 864 (Tex. Crim. App. 2009).
[5] *Id.*
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

No. 15-70023

Edwards to scoot over to the passenger seat.[14] Edwards seized her opportunity to escape through the still-open passenger-side door.[15] Young drove off in Edwards' car.[16]

Minutes later, Young entered the mini-mart/dry cleaners owned by Patel.[17] Young moved behind Patel, threatening him: "Alright, give up the money. I'm not playing. I'm not f[******] playing."[18] Patel moved behind the counter toward the cash register.[19] While continuing to demand that he "give up the money," Young shot Patel twice.[20] Patel tripped the alarm between shots as he attempted to flee.[21] Young pursued him momentarily, yelling once more for money, before concealing the revolver under his shirt and exiting the store.[22] All of the interactions between Young and Patel were captured by a surveillance camera.

As Young fled, a customer in the parking lot was able to make out the letter "W" on the license plate of Edwards' car.[23] Another customer provided a description of Young and the red Mazda, leading to his arrest later that morning.[24] Patel died as a result of his wounds.[25]

Convicted of capital murder and sentenced to death, Young, on direct appeal, alleged fifteen points of error, which the Texas Court of Criminal Appeals rejected.[26] The Supreme Court denied certiorari.[27] Young then sought

---

[14] *Id.*
[15] *Id.* at 864-65.
[16] *Id.* at 865.
[17] *Id.* at 860.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 860-61.
[21] *Id.* at 861.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.* at 860.
[27] *Young v. Texas*, 558 U.S. 1093 (2009).

No. 15-70023

state habeas relief. After an evidentiary hearing, the Texas trial court recommended rejection of each of his twenty claims for relief.[28] The Texas Court of Criminal Appeals adopted that recommendation.[29]

In 2014, Young filed a petition for a writ of habeas corpus in the Western District of Texas. The petition, as amended, alleged in relevant part that the trial court's jury instructions were constitutionally deficient and that trial counsel was ineffective for failing to object to those deficiencies. After rejecting his request for an evidentiary hearing, the district court denied Young's claims and a certificate of appealability.[30] We in turn granted a certificate of appealability on claims of flawed jury instructions and ineffective assistance of counsel.[31] The Supreme Court denied certiorari on Young's other claims.[32]

II.

As all claims before us were adjudicated on the merits in the Texas courts, our review is constrained by the deferential standard of review mandated by the Antiterrorism and Effective Death Penalty Act.[33] The

---

[28] *See* Findings of Fact & Conclusions of Law, *Ex parte Young*, No. 2005-CR-1183-W1 (187th Dist. Ct., Bexar County, Tex. Nov. 28, 2012) (hereinafter "187th District Court Opinion").

[29] *Ex parte Young*, No. WR-70,513-01, 2013 WL 2446428 (Tex. Crim. App. June 5, 2013) (unpublished).

[30] *Young v. Stephens*, No. SA-13-CA-500-XR, 2015 WL 4276196 (W.D. Tex. July 13, 2015).

[31] *Young v. Davis*, 835 F.3d 520, 530 (5th Cir. 2016).

[32] *Young v. Davis*, 137 S. Ct. 1224 (2017).

[33] "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim— (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also McWilliams v. Dunn*, No. 16-5294, 2017 WL 2621324, at *14 (U.S. June 19, 2017) ("Put another way, '[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.'") (quoting *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (per curiam)).

Supreme Court has instructed that "'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"[34]; "that "'clearly established Federal law" for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'"[35]

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) provide two separate avenues for federal habeas relief.[36] A state court's decision is "contrary to" clearly established federal law of the Supreme Court if it either (1) "applies a rule that contradicts the governing law set forth" in the Supreme Court's opinions or (2) "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent."[37] "The 'unreasonable application' clause of § 2254(d)(1) applies when the 'state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"[38]

Our question is whether the Texas courts unreasonably applied the principles of *Mills* and *Strickland* to Young's claims.[39] In reviewing state court decisions, we are mindful that "[s]ection 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [the Supreme] Court's precedent; it does not require state courts to extend that precedent or license

---

[34] *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).

[35] *Woods*, 135 S. Ct. at 1376 (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).

[36] *Bell v. Cone*, 535 U.S. 685, 694 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)).

[37] *Williams*, 529 U.S. 362, 405-406.

[38] *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (quoting *Williams*, 529 U.S. at 413).

[39] *See Young*, 283 S.W.3d at 878-79; *Ex Parte Young*, No. WR-70513-01, 2013 WL 2446428 (Tex. Crim. App. June 5, 2013) (adopting Findings of Fact and Conclusions of Law, *Ex Parte Young*, No. 2005-CR-1183-W1 (187th Dist. Ct., Bexar County, Tex. Nov. 28, 2012)).

No. 15-70023

federal courts to treat the failure to do so as error."[40] "[A]n 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice."[41] "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[42] We are also limited to claims for which the factual basis was developed in state court unless:

> (A) the claim relies on—(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[43]

## III.

We turn first to whether the Texas trial court's failure to give a jury instruction required by Article 37.071, Section 2(f)(3) of the Texas Code of Criminal Procedure subjected Young to a substantial risk that the individual jurors would believe they had to unanimously agree on what evidence was mitigating in violation of *Mills*.

---

[40] *White*, 134 S. Ct. at 1706 (citation omitted).

[41] *Woods*, 135 S. Ct. at 1376 (quoting *White*, 134 S. Ct. at 1702); *see also Virginia v. LeBlanc*, No. 16-1177, 2017 WL 2507375, at *3 (U.S. June 12, 2017) ("In other words, a litigant must 'show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Woods*, 135 S. Ct. at 1376)).

[42] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

[43] 28 U.S.C. § 2254(e)(2); *see also Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011) (limiting our review "to the record that was before the state court that adjudicated the claim on the merits").

No. 15-70023

A.

In *Lockett*, the Supreme Court held that the Eighth and Fourteenth Amendments require that, in imposing a death sentence, the sentencer be able to consider all relevant mitigating evidence.[44] Ohio's then-applicable capital punishment statute required a death sentence unless the trial judge found, by a preponderance of the evidence, that "(1) the victim had induced or facilitated the offense, (2) it was unlikely that [the defendant] would have committed the offense but for the fact that she 'was under duress, coercion, or strong provocation,' or (3) the offense was 'primarily the product of [the defendant's] psychosis or mental deficiency.'"[45] In striking down the Ohio law, the Court held that:

> [A] statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.[46]

Four years later, the Court extended *Lockett*, holding "[j]ust as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence."[47] Another four years later, *Skipper* extended *Lockett* to evidentiary rulings.[48] The following year, the Court ruled that a Florida judge's instructions to the jury that Florida's death penalty law limited

---

[44] *Lockett v. Ohio*, 438 U.S. 586 (1978).

[45] *Id.* at 593-94 (citing OHIO REV. CODE §§ 2929.03-2929.04(B) (1975)) (alterations in original).

[46] *Id.* at 605.

[47] *Eddings v. Oklahoma*, 455 U.S. 104, 113-14 (1982).

[48] *Skipper v. South Carolina*, 476 U.S. 1, 8 (1986).

mitigation evidence to the types specifically enumerated in the statute violated the constitutional rights of the defendant.[49]

In *Mills*, the Court applied *Lockett* to Maryland's capital murder jury instructions.[50] The verdict form there provided the instruction: "Based upon the evidence we unanimously find that each of the following mitigating circumstances which is marked 'yes' has been proven to exist by A PREPONDERANCE OF THE EVIDENCE and each mitigating circumstance marked 'no' has not been proven by A PREPONDERANCE OF THE EVIDENCE," followed by a list of mitigating circumstances, each with an option to check either yes or no.[51] "No instruction was given indicating what the jury should do if some but not all of the jurors were willing to recognize something about the petitioner, his background, or the circumstances of the crime as a mitigating factor."[52] The Court held that the verdict form and jury instructions created "a substantial probability that reasonable jurors, upon receiving the judge's instructions in this case, and in attempting to complete the verdict form as instructed, well may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance."[53]

In *Boyde*, the Court addressed the lack of clarity in its "standard for reviewing jury instructions claimed to restrict impermissibly a jury's

---

[49] *Hitchcock v. Dugger*, 481 U.S. 393, 398-99 (1987).
[50] *Mills*, 486 U.S. at 376-77.
[51] *Id.* at 387.
[52] *Id.* at 379.
[53] *Id.* at 384.

consideration of relevant evidence" [54] under *Mills*,[55] *Francis v. Franklin*,[56] and *California v. Brown*.[57] In cases where the instructions were claimed to be "ambiguous, and therefore subject to an erroneous interpretation," the Court provided that "the proper inquiry . . . is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[58] That same term, the Court struck down North Carolina's requirement that juries unanimously decide which evidence is mitigating, even where the jury could opt for life imprisonment without agreeing on mitigating evidence, because, as in *Mills*, "it would be the 'height of arbitrariness to allow *or* require the imposition of the death penalty' where 1 juror was able to prevent the other 11 from giving effect to mitigating evidence."[59] "*Mills*," the Court explained, "requires that each juror be permitted to consider and give effect to mitigating evidence when deciding the ultimate question whether to vote for a sentence of death."[60]

Most recently, the Court again examined jury forms and instructions in *Smith v. Spisak*.[61] There, the trial court gave the following jury instructions:

> [Y]ou, the trial jury, must consider all of the relevant evidence raised at trial, the evidence and testimony received in this hearing

---

[54] *Boyde v. California*, 494 U.S. 370, 378 (1990).

[55] 486 U.S. at 375-77 (offering, alternatively, "whether petitioner's interpretation of the sentencing process is one a reasonable jury could have drawn from the instructions given by the trial judge and from the verdict form employed in this case," and whether there is a "substantial possibility that the jury may have rested its verdict on the 'improper' ground"); *see also id.* at 389-90 (White, J., concurring) ("The issue in this case is how reasonable jurors would have understood and applied their instructions."). We need not pause to ask whether these expressions insist on the same level of stringency. Each insists upon more than a "possibility."

[56] 471 U.S. 307, 315-16 (1985) (framing the question as "what a reasonable juror could have understood the charge as meaning).

[57] 479 U.S. 538, 541 (1987) (asking what a reasonable juror "could" have done and what a reasonable juror "would" have done).

[58] *Boyde*, 494 U.S. at 380.

[59] *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990) (quoting *Mills*, 486 U.S. at 374).

[60] *Id.* at 442-43.

[61] 558 U.S. 139 (2010).

and the arguments of counsel. From this you must determine whether, beyond a reasonable doubt, the aggravating circumstances, which [Spisak] has been found guilty of committing in the separate counts are sufficient to outweigh the mitigating factors present in this case.

If all twelve members of the jury find by proof beyond a reasonable doubt that the aggravating circumstance in each separate count outweighs the mitigating factors, then you must return that finding to the Court.

. . .

On the other hand, if after considering all of the relevant evidence raised at trial, the evidence and the testimony received at this hearing and the arguments of counsel, you find that the State failed to prove beyond a reasonable doubt that the aggravating circumstances which [Spisak] has been found guilty of committing in the separate counts outweigh the mitigating factors, you will then proceed to determine which of two possible life imprisonment sentences to recommend to the Court.[62]

Importantly, "the instructions did not say that the jury must determine the existence of each individual mitigating factor unanimously. Neither the instructions nor the forms said anything about how—or even whether—the jury should make individual determinations that each particular mitigating circumstance existed."[63] Still, the Court "conclude[d] that the state court's decision upholding these forms and instructions was not 'contrary to, or . . . an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' in *Mills*."[64] In a per curiam opinion the following year, the Court again upheld "virtually the same Ohio jury instructions" under both *Mills* and *Beck*.[65]

---

[62] *Id.* at 147.

[63] *Id.* at 148.

[64] *Id.* at 148-49 (citing 28 U.S.C. § 2254(d)(1)).

[65] *Bobby v. Mitts*, 563 U.S. 395, 396-97 (2011) (per curiam).

No. 15-70023

B.

The Texas Code of Criminal Procedure provides:

(e)(1) The court shall instruct the jury that . . . it shall answer the following issue:
Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment without parole rather than a death sentence be imposed.
. . .
(f) The court shall charge the jury that in answering the issue submitted under Subsection (e) of this article, the jury:
. . .
(3) need not agree on what particular evidence supports an affirmative finding on the issue.[66]

During the punishment phase of Young's trial, the judge instructed the jury as follows:

> Ladies and gentlemen, as before, I'm going to read to you the Charge of the Court. This is the law that you need to apply to what you heard and believed on the witness stand. And, of course, you're to use everything you heard in the first phase of the trial as well as everything you heard in the second phase of the trial in determining the answers to these questions before you.
> . . .
> By your verdict returned in this case, you have found the defendant, Christopher Young, guilty of capital murder, as alleged in the indictment.
> You are instructed that a sentence of life or death is mandatory upon conviction of a capital felony.
> It now becomes your duty to consider all the evidence in this case and determine the answers to certain questions which will be set forth for your consideration. The questions will be termed "issues" in this charge, and must be answered "Yes" or "No"; the punishment to be assessed the defendant will be assessed based on your answers to these issues.

---

[66] TEX. CODE CRIM. PROC. ANN. art. 37.071 §§ (e)(1)-(f)(3) (West 2017).

11

No. 15-70023

If the jury returns an affirmative finding on the first special issue submitted, and a negative finding on the second special issue, this Court shall sentence the defendant to death. If the jury returns a negative finding on the first special issue or an affirmative finding as to the second special issue, the Court shall sentence the defendant to confinement in the Institutional Division of the Texas Department of Criminal Justice for life.

In deliberating upon the special issues, you shall consider all evidence admitted at the guilt or innocence stage and the punishment stage, including evidence of the defendant's background or character or the circumstances of the offense that militates for or mitigates against the imposition of the death penalty.

You are instructed that the State must prove the first issue beyond a reasonable doubt.

The jury may not answer the first issue "Yes" unless there is unanimous agreement of the individual jurors upon that answer. The jury may not answer the first issue "No" unless ten or more jurors agree upon that answer, **however, the ten jurors need not agree on what particular evidence supports a "No" answer to the issue.**

The first issue is:

Do you find from the evidence beyond a reasonable doubt that there is a probability that the defendant, Christopher Young, would commit criminal acts of violence that would constitute a continuing threat to society?

Answer: We the jury unanimously find and determine beyond a reasonable doubt the answer to this special issue is "Yes". Or Answer: We the jury, because at least ten (10) jurors have a reasonable doubt as to the probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society, answer this special issue "No".

If you have answered the first special issue "Yes", then you will answer special issue number two.

The second issue is:

State whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or are sufficient mitigating circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

12

No. 15-70023

Answer: We, the jury, unanimously find and determine that the answer to this Special Issue is "No". Or Answer: We, the jury, because at least ten (10) jurors find that there is a sufficient mitigating circumstance or are sufficient mitigating circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed, answer this Special Issue "Yes."

That the trial court failed to give Young's jury the instruction required under Section 2(f)(3) is not disputed. Young attacks the jury charge as deficient under *Mills* on two fronts. First, he argues that it is a *Mills* error where a statutorily mandated jury instruction that jurors need not agree on which evidence they find mitigating is omitted. Second, he argues that the language in the instruction regarding special issue two could reasonably be interpreted to require agreement of at least ten jurors on the mitigating circumstance or circumstances they found sufficient to warrant a sentence of life imprisonment instead of death. Young argues that this instruction, when viewed in connection with the instruction for special issue one—which did include the instruction that "the ten jurors need not agree on what particular evidence supports a 'No' answer"—created a substantial probability that his jurors did not believe they could consider relevant mitigating evidence unless at least ten of them agreed on the evidence they found mitigating.

The Texas Court of Criminal Appeals rejected these claims on the merits on direct review, reasoning that:

[E]ven when presented with the circumstances in *Mills*, the Supreme Court did not go so far as to say it is a constitutional requirement that every jury deliberating punishment in a capital case should be explicitly instructed that the jurors need not agree on the particular mitigating circumstances.

In this case, while jurors were not given the statutorily required instruction that they need not agree on the particular mitigating evidence, they unanimously found that no sufficient mitigating circumstance or circumstances warranted that a life sentence be imposed. The foreman signed the answer that stated: "We, the

jury, unanimously find and determine that the answer to this Special Issue is 'No.'" Because no juror believed there was a circumstance or circumstances that warranted a life sentence, there was no possibility that the jurors would be confused about a need to agree on a particular circumstance or circumstances.

Although the trial court erred in failing to give the statutory instruction, in this case, the appellant was not deprived of the constitutional guarantee of a unanimous verdict and did not suffer egregious harm. Nor was the appellant denied a fair trial.[67]

On state habeas review, the Texas trial court, in a thoughtful decision adopted by the Texas Court of Criminal Appeals, looked to *Spisak*, observing that it:

> [D]istinguished the jury instructions and verdict forms from those in *Mills*. . . . found that jury instructions and jury forms did not create a "substantial probability" that the jury believed it was precluded from finding a mitigating circumstance that had not been unanimously agreed upon. . . . found significant the fact that the "instructions did not say that the jury must determine the existence of each individual mitigating factor unanimously" and that "the instructions repeatedly told the jury to consider all the relevant evidence."

> Similarly, the jury instructions and verdict forms in this case did not say that the jury had to determine the existence of each individual mitigating factor unanimously. They also repeatedly told the jury to consider all the evidence. In fact, the second special issue is written to require consideration of a vast quantity of potential mitigating evidence.

> . . .

> [T]hat both the future danger and mitigation special issues carried similar unanimity requirements for answers that would negatively impact [Young]. . . . that this . . . demonstrates that the jury understood the general instructions addressing the future danger special issue to be unique to that issue and the absence of similar

---

[67] *Young,* 283 S.W.3d at 878-89.

instructions for the mitigation special issue not to indicate that it should be treated any differently.

. . .

[T]hat the verdict form, together with the jury instructions, show that the jury understood the right to have each juror consider different mitigating evidence in reaching a unanimous verdict that there was no mitigating circumstance or combination of circumstances that called for a life sentence rather than one of death. Consequently, the jury had an adequate vehicle in which to give effect to matters each juror may have considered mitigating.[68]

And, of course, the court's charge is not the sole source of relevant jury instruction. Nothing in the court's other admonitions or the arguments of counsel created a reasonable likelihood that a juror would conclude that unanimity was required to give effect to mitigating evidence. At the outset, during *voir dire*, the court described the penalty phase of the trial, emphasizing the need for the jury to consider all of the evidence in answering the special issues:

[Y]ou're to consider, in answering the questions, the evidence that you hear, the circumstances of the offense – you know, what happened, is it bad, is it not as bad as you think – the criminal history, the good history of the defendant; mitigating circumstances, the background, the mental background of the defendant, all kinds of things. You're to consider it all. If it's given to you, you're to consider it. You don't disregard anything. You don't have to answer it in a certain way, no matter what the evidence is for you. You're entitled to rule on it as you see fit. You can give it what weight you want yourself. But you're to consider it and listen to it all, and give it whatever weight you want.

In other words, if you think this is a mitigating circumstance, that's fine. If you think it's not, that's also fine. It's up to you. It's your decision and your decision alone, the twelve of you. But you're to listen to it all and take it all into account, and disregard what

---

[68] 187th District Court Opinion at 10-14.

you like, take into account what you don't like, or do like, and go from there.

At the end of the penalty phase, in charging the jury, the court instructed: "use everything you heard in the first phase of the trial as well as everything you heard in the second phase of the trial in determining the answers to these questions before you." While the court's statements do not disclaim a unanimity requirement, neither do they suggest one—the evil forbidden by *Mills*.

Nor did counsels' arguments suggest that the jury had to agree unanimously on what evidence was mitigating. In her closing argument at the end of the penalty phase, Ms. Skinner, on behalf of the state, repeatedly urged the jury to consider all of the evidence in answering the special issues:

> [T]ake a look at all of the evidence that you heard in the case and decide the answers to those special issues . . . . Stand back and ask yourself, is there a sufficient mitigating circumstance or circumstances to warrant imposing a life sentence instead of a death sentence in this case. . . . Then take a look at his character and his background. Look at everything you know. . . . And is there really anything that you've heard that calls you to think, "oh, now I understand this, now I understand it"? . . . Take a look at all the character and the background.

Finally, Young's counsel's closing argument urged the jury to weigh all of the evidence in answering the special issues, and, as would be expected, appears to accent the role of the individual juror. At the least, nothing in counsel's argument sustains a reasonable likelihood of unanimity:

> The issue is for you to have a framework, to have background information, and to take everything into account, everything about Christopher Young in deciding if he should paid [sic] the ultimate price. . . . And when you take into account everything that you've heard, and you [sic] looking at that mitigation issue, I think you will find that there are sufficient mitigating circumstances to warrant that life imprisonment . . . . some of you, your minds may be made up already. But I appeal to you jurors that the [sic]

courage and the conviction to follow your oath as a juror. . . . Think about that when you decide what is mitigation. **Mitigation, as we told you, you'll know it when you see it. You will either believe it or you won't. That is the function of a juror.** . . . But even if you do think, in your heart, in your mind, during deliberation, he's going to be a future threat, look at the issue of mitigation.

It is possible—in the sense that anything is possible—that Young's jurors mistakenly believed that they had to agree on whether each piece of allegedly mitigating evidence was, in fact, mitigating, or else were forbidden to consider that evidence in answering special issue two. That said, the admittedly incomplete charge is not contrary to *Mills*. As the Texas state habeas court discussed, and as in *Spisak*, the jury instructions here did not say "anything about how—or even whether—the jury should make individual determinations that each particular mitigating circumstance existed."[69] Given the record before us, we cannot say there existed a reasonable likelihood or "a substantial probability that reasonable jurors . . . may have thought they were precluded from considering any mitigating evidence unless all 12 jurors agreed on the existence of a particular such circumstance."[70] *A fortiori*, we cannot conclude that the state courts unreasonably applied *Mills*.

## C.

Young argues that we have never held that *Spisak* teaches that *Mills* is categorically inapplicable to Texas's current death penalty sentencing scheme. That is true, and we do not so hold today. Young also argues that we should not consider *Spisak* because it followed after Young's trial and direct appeals and was not "clearly established law" for the purposes of this case. We do not cite to *Spisak* for that purpose, nor did the Texas trial court. Rather than

---

[69] *Spisak*, 558 U.S. 139 at 148.
[70] *Mills*, 486 U.S. at 384.

17

establishing a new rule of criminal law, *Spisak* does just the opposite—rejecting the idea that *Mills* requires a prophylactic instruction—a requisite not clearly established by *Mills* and not the law post-*Spisak*.

Additionally, Young argues that *Spisak* is not applicable here as it was a case-specific application of *Mills* to Ohio's "weighing scheme" while Texas is a non-weighing jurisdiction. Distinctions between weighing and non-weighing jurisdictions arrive here without a difference. Referring to some jurisdictions as "weighing" and others as "non-weighing"—a distinction that "was adopted relatively early in the development of [the Supreme Court's] death penalty jurisprudence"—"is somewhat misleading, since [the Supreme Court has] held that in *all* capital cases the sentencer must be allowed to weigh the facts and circumstances that arguably justify a death sentence against the defendant's mitigating evidence."[71]

To be clear, under *Furman* and progeny, states must narrow the class of murderers eligible for capital punishment, a requirement "usually met when the trier of fact finds at least one statutorily defined eligibility factor."[72] After the defendant is found eligible to receive a death sentence:

> Some States tell the jury: "Consider all the mitigating factors and weigh them against the specific aggravating factors that you found, at Stage One, made the defendant eligible for the death penalty. If the aggravating factors predominate, you must sentence the defendant to death; otherwise, you may not." Because the law in these States tells the jury to weigh only statutory aggravating factors (typically the same factors considered at Stage One) against the mitigating factors, this Court has called these States "weighing States." This is something of a misnomer because the jury cannot weigh everything but is instead limited to weighing

---

[71] *Brown v. Sanders*, 546 U.S. 212, 216-17 (2006) (citing *Eddings v. Oklahoma*, 455 U.S. 104, 110 (1982)).

[72] *Brown*, 546 U.S. at 216.

certain statutorily defined aggravating factors. The Court has identified Mississippi as a classic example of a weighing State.[73]

In contrast:

> Other States tell the jury: "Consider all the mitigating factors and weigh them, not simply against the statutory aggravating factors you previously found at Stage One, but against any and all factors you consider aggravating." Because the balance includes all aggravating factors and not only those on the Stage One eligibility list, this Court has called such States "nonweighing States." Although it might be clearer to call these States "complete weighing" States (for the jury can weigh everything that is properly admissible), I shall continue to use the traditional terminology. The Court has identified Georgia as the prototypical example of a State that has adopted this complete weighing approach.[74]

The principles articulated in *Mills* and *Spisak,* though treating "weighing" jurisdictions, are not so limited. Rather, they demand that capital jurors be allowed to consider and give effect to all relevant mitigating evidence, whether or not the entire jury agrees on whether a given piece of evidence is mitigating. That *Mills* addressed Maryland's weighing scheme does not diminish its precedential reach. Insofar as individual jurors are able to consider mitigating evidence through their own eyes, free of a required level of consensus, the constitution is satisfied. *Mills* requires that much, and no more.

## D.

Young argues that declarations from two of his jurors show that the jurors thought they had to agree upon evidence before they could consider it in mitigation.[75] We have found affidavits of this genre—seeking to disclose jury

---

[73] *Id.* at 229 (Breyer, J., dissenting) (citing *Stringer v. Black*, 503 U.S. 222, 229 (1992)).

[74] *Id.* at 229-30 (Breyer, J., dissenting).

[75] Young's habeas petition contains four juror affidavits, three of which are typed and one that is handwritten. Two of those affidavits are relevant here, stating that "When we were deliberating punishment, we as jurors thought that all of us had to agree about what evidence was mitigating" and "At the trial, I thought that the jurors had to agree on what

No. 15-70023

deliberations—inadmissible under Federal Rule of Evidence 606(b), *Summers v. Dretke*,[76] and *United States v. Jones*.[77]

The Supreme Court has since opened, narrowly we think, this door thought closed—a retreat from the traditional rule, adopted into the Federal Rules of Evidence, precluding juror testimony from being used to impeach a jury's verdict.[78] In *Pena-Rodriguez*, Justice Kennedy wrote of the "substantial merit" of Rule 606(b), which "promotes full and vigorous discussion by providing jurors with considerable assurance that after being discharged they will not be summoned to recount their deliberations, and they will not otherwise be harassed or annoyed by litigants seeking to challenge the verdict."[79] Then, citing to the Fourteenth Amendment's purpose of "eliminating

---

evidence was mitigating in order to find there was sufficient mitigating circumstances to sentence him to life instead of death." Each affidavit contains precisely worded paragraphs that appear calculated to challenge various aspects of the penalty phase, such as the 10-12 instruction and the lack of an instruction regarding the outcome if jury deliberations broke down. The language across the typed affidavits is nearly identical. *See* Declaration of Robert Gonzales at ¶ 8 ("When we were deliberating punishment, I initially considered a life sentence an appropriate punishment, but I thought that ten or more jurors had to agree in order for Mr. Young to receive a life sentence. I did not know that if only one juror had found that there was sufficient mitigating evidence to warrant a life sentence, that Mr. Young would have received a life sentence."); Declaration of Ramon Luna at ¶ 10 ("When we were deliberating punishment, we as jurors thought that in order for Chris Young to receive a life sentence instead of death, all of us had to agree that a life sentence was the appropriate punishment. I did not know that if only one juror had found that there was sufficient mitigating evidence to warrant a life sentence, that Mr. Young would have received a life sentence."); Declaration of Jason Olivarri at ¶ 10 ("When we were deliberating punishment, we as jurors thought that in order for Chris Young to receive a life sentence instead of death, all of us had to agree that a life sentence was the appropriate punishment. I did not know that if only one juror had found that there was sufficient mitigating evidence to warrant a life sentence, that Mr. Young would have received a life sentence."). The language in the handwritten affidavit differs slightly, expressing the same sentiment. *See* Declaration of Monique Pathaphone at ¶ 5 ("I did not realize that if only one person believed there were sufficient mitigating circumstances to warrant sentencing him to life instead of death he would be sentenced to life.").

[76] 431 F.3d 861, 873 (5th Cir. 2005).

[77] 132 F.3d 232, 245 (5th Cir. 1998).

[78] *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855 (2017).

[79] *Id.* at 865.

racial discrimination emanating from official sources in the States,"[80] as well as the especially invidious threat posed by racial bias on jury panels,[81] the Court held "that where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee."[82]

The Court's emphasis on our long struggle against racial prejudice, and the "constitutional[] and institutional concerns"[83] attending that history, evince its constrained relaxing of a traditionally inviolate rule. Prohibition of racial discrimination lies at the core of the Fourteenth Amendment. And in the erratic but relentless march toward a color-blind justice, its role in criminal proceedings has been salient. We decline the invitation to extend further the reach of *Pena-Rodriguez*, one antithetical to the privacy of jury deliberations—a principle whose loss would be attended by such high costs as to explain its veneration.

Nor will we ignore that Young never presented these affidavits to the Texas courts. In determining whether a state court misapplied federal law under § 2254(d), *Pinholster* precludes our consideration of evidence that was not before the state court that adjudicated the claim on the merits.[84]

---

[80] *Id.* at 867 (quoting *McLaughlin v. Florida*, 379 U.S. 184, 192 (1964)).

[81] *Pena-Rodriguez*, 137 S. Ct. at 868.

[82] *Id.* at 869.

[83] *Id.* at 868.

[84] *Pinholster*, 563 U.S. at 182 ("This backward-looking language [of § 2254(d)(1)] requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time i.e., the record before the state court."); *see also id.* at 182-83 ("It would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court."); *Lewis v. Thaler*, 701 F.3d 783, 791 (5th Cir. 2012) ("The import of *Pinholster* is clear: because [the petitioner's] claims have already been

No. 15-70023

IV.

Young next claims that his trial counsel's failure to object to the missing Section 2(f)(3) instruction constituted ineffective assistance of counsel. We review claims of ineffective assistance of counsel under the standard set by the Supreme Court in *Strickland v. Washington*.[85] "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[86] Ineffective assistance of counsel under *Strickland* consists of two elements: (1) deficient performance and (2) resulting prejudice.[87] "The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community: The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."[88]

For the second prong—prejudice—"[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[89] "When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."[90]

---

adjudicated on the merits, § 2254 limits our review to the record that was before the state court.").

[85] 466 U.S. at 686-87.

[86] *Id.* at 686.

[87] *Id.* at 687.

[88] *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)).

[89] *Strickland*, 466 U.S. at 694.

[90] *Id.* at 695.

No. 15-70023

The Texas state trial court, whose opinion was adopted by the Texas Court of Criminal Appeals, applied *Strickland* in finding that Young failed to show prejudice as a result of the failure to object to the missing jury instruction.[91] Assuming *arguendo*—as the Texas state trial court did—that failing to object to the absent jury instruction was deficient performance, Young here fails to show prejudice. The Texas state courts' application of *Strickland* to Young's ineffective assistance of counsel claims was not unreasonable.[92]

**\*\*\*\***

The judgment of the United States District Court denying federal habeas relief is affirmed.

---

[91] 187th District Court Opinion at 17.

[92] *Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable"); *see also Druery v. Thaler*, 647 F.3d 535, 539 (5th Cir. 2011) (holding, in regards to an ineffective assistance of counsel claim reviewed by the federal courts under AEDPA, "in order to obtain habeas relief, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" (quoting *Harrington*, 562 U.S. at 786-87)).