# SUPREME COURT OF THE UNITED STATES

## RANDY WHITE, WARDEN *v.* ROGER L. WHEELER

ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED
STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

No. 14–1372. Decided December 14, 2015

PER CURIAM.

A death sentence imposed by a Kentucky trial court and affirmed by the Kentucky Supreme Court has been overturned, on habeas corpus review, by the Court of Appeals for the Sixth Circuit. During the jury selection process, the state trial court excused a juror after concluding he could not give sufficient assurance of neutrality or impartiality in considering whether the death penalty should be imposed. The Court of Appeals, despite the substantial deference it must accord to state-court rulings in federal habeas proceedings, determined that excusing the juror in the circumstances of this case violated the Sixth and Fourteenth Amendments. That ruling contravenes controlling precedents from this Court, and it is now necessary to reverse the Court of Appeals by this summary disposition.

Warden Randy White is the petitioner here, and the convicted prisoner, Roger Wheeler, is the respondent.

In October 1997, police in Louisville, Kentucky, found the bodies of Nigel Malone and Nairobi Warfield in the apartment the couple shared. Malone had been stabbed nine times. Warfield had been strangled to death and a pair of scissors stuck out from her neck. She was pregnant. DNA taken from blood at the crime scene matched respondent's. Respondent was charged with the murders.

During *voir dire,* Juror 638 gave equivocal and inconsistent answers when questioned about whether he could consider voting to impose the death penalty. In response to the judge's questions about his personal beliefs on the

death penalty, Juror 638 said, "I'm not sure that I have formed an opinion one way or the other.  I believe there are arguments on both sides of the—of it."  App. to Pet. for Cert. 126a.  When asked by the prosecution about his ability to consider all available penalties, Juror 638 noted he had "never been confronted with that situation in a, in a real-life sense of having to make that kind of determination."  *Id.*, at 131a.  "So it's difficult for me," he explained, "to judge how I would I guess act, uh."  *Ibid.*  The prosecution sought to clarify Juror 638's answer, asking if the juror meant he was "not absolutely certain whether [he] could realistically consider" the death penalty.  *Id.*, at 132a.  Juror 638 replied, "I think that would be the most accurate way I could answer your question."  *Ibid.*  During defense counsel's examination, Juror 638 described himself as "a bit more contemplative on the issue of taking a life and, uh, whether or not we have the right to take that life."  *Id.*, at 133a.  Later, however, he expressed his belief that he could consider all the penalty options.  *Id.*, at 134a.

The prosecution moved to strike Juror 638 for cause based on his inconsistent replies, as illustrated by his statement that he was not absolutely certain he could realistically consider the death penalty.  The defense opposed the motion, arguing that Juror 638's answers indicated his ability to consider all the penalty options, despite having some reservations about the death penalty.  The judge said that when she was done questioning Juror 638, she wrote in her notes that the juror "'could consider [the] entire range'" of penalties.  *Id.*, at 138a.  She further stated that she did not "see him as problematic" at the end of her examination.  *Ibid.*  But she also noted that she did not "hear him say that he couldn't realistically consider the death penalty," and reserved ruling on the motion until she could review Juror 638's testimony.  *Ibid.*  The next day, after reviewing the relevant testimony, the judge struck Juror 638 for cause.  When she announced her

decision to excuse the juror, the trial judge stated, "And when I went back and reviewed [the juror's] entire testimony, [the prosecution] concluded with saying, 'Would it be accurate to say that you couldn't, couldn't consider the entire range?' And his response is—I think was, 'I think that would be pretty accurate.' So, I'm going to sustain that one, too." *Id.*, at 139a–140a.

The case proceeded to trial. Respondent was convicted of both murders and sentenced to death. The Kentucky Supreme Court affirmed the convictions and the sentence. *Wheeler* v. *Commonwealth*, 121 S. W. 3d 173, 189 (2003). In considering respondent's challenges to the trial court's excusal of certain jurors for cause, the Kentucky Supreme Court held that the trial judge "appropriately struck for cause those jurors that could not impose the death penalty. . . . There was no error and the rights of the defendant to a fair trial by a fair and impartial jury . . . under both the federal and state constitutions were not violated." *Id.,* at 179.

After exhausting available state postconviction procedures, respondent sought a writ of habeas corpus under 28 U. S. C. §2254 from the United States District Court for the Western District of Kentucky. He asserted, *inter alia*, that the Kentucky trial court erred in striking Juror 638 during *voir dire* on the ground that the juror could not give assurances that he could consider the death penalty as a sentencing option. The District Court dismissed the petition; but a divided panel of the Court of Appeals for the Sixth Circuit reversed, granting habeas relief as to respondent's sentence. *Wheeler* v. *Simpson*, 779 F. 3d 366, 379 (2015). While acknowledging the deferential standard required on federal habeas review of a state conviction, the Court of Appeals held that allowing the exclusion of Juror 638 was an unreasonable application of *Witherspoon* v. *Illinois*, 391 U. S. 510 (1968), *Wainwright* v. *Witt*, 469 U. S. 412 (1985), and their progeny. 779 F. 3d, at 372–

374.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), habeas relief is authorized if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U. S. C. §2254(d)(1). This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt* v. *Titlow*, 571 U. S. ___, ___ (2013) (slip op., at 6). Under §2254(d)(1), "'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White* v. *Woodall*, 572 U. S. ___, ___ (2014) (slip op., at 4) (quoting *Harrington* v. *Richter*, 562 U. S. 86, 103 (2011)).

The Court of Appeals was required to apply this deferential standard to the state court's analysis of respondent's juror exclusion claim. In *Witherspoon*, this Court set forth the rule for juror disqualification in capital cases. *Witherspoon* recognized that the Sixth Amendment's guarantee of an impartial jury confers on capital defendants the right to a jury not "uncommonly willing to condemn a man to die." 391 U. S., at 521. But the Court with equal clarity has acknowledged the State's "strong interest in having jurors who are able to apply capital punishment within the framework state law prescribes." *Uttecht* v. *Brown*, 551 U. S. 1, 9 (2007). To ensure the proper balance between these two interests, only "a juror who is substantially impaired in his or her ability to impose the death penalty under the state-law framework can be excused for cause." *Ibid.* As the Court explained in *Witt*, a

juror may be excused for cause "where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law." 469 U. S., at 425–426.

Reviewing courts owe deference to a trial court's ruling on whether to strike a particular juror "regardless of whether the trial court engages in explicit analysis regarding substantial impairment; even the granting of a motion to excuse for cause constitutes an implicit finding of bias." *Uttecht*, 551 U. S., at 7. A trial court's "finding may be upheld even in the absence of clear statements from the juror that he or she is impaired . . . ." *Ibid.* And where, as here, the federal courts review a state-court ruling under the constraints imposed by AEDPA, the federal court must accord an additional and "independent, high standard" of deference. *Id.*, at 10. As a result, federal habeas review of a *Witherspoon-Witt* claim—much like federal habeas review of an ineffective-assistance-of-counsel claim—must be """"doubly deferential."""" *Burt, supra,* at \_\_\_ (slip op., at 1) (quoting *Cullen* v. *Pinholster*, 563 U. S. 170, 190 (2011)).

The Court of Appeals held that the Kentucky Supreme Court unreasonably applied *Witherspoon*, *Witt*, and their progeny when it determined that removing Juror 638 for cause was constitutional. 779 F. 3d, at 372–374. The Court of Appeals determined Juror 638 "understood the decisions he would face and engaged with them in a thoughtful, honest, and conscientious manner." *Id.,* at 373. In the Court of Appeals' estimation, the trial judge concluded the juror was not qualified only by "misapprehending a single question and answer exchange" between Juror 638 and the prosecution, *id.,* at 374—the exchange in which Juror 638 stated he was not absolutely certain he could realistically consider the death penalty, *id.*, at 372. According to the Court of Appeals, Juror 638 "agreed *he did not know* to an absolute certainty whether he could realistically consider the death penalty, but the court

proceeded as if *he knew he could not.*" *Ibid.* The Court of
Appeals further determined that if the trial judge, when
reviewing Juror 638's examination, had "properly pro-
cessed that exchange" between Juror 638 and the prosecu-
tion, Juror 638 would not have been excused. *Id.,* at 374.

Both the analysis and the conclusion in the decision
under review were incorrect. While the Court of Appeals
acknowledged that deference was required under AEDPA,
it failed to ask the critical question: Was the Kentucky
Supreme Court's decision to affirm the excusal of Juror
638 for cause "'so lacking in justification that there was an
error well understood and comprehended in existing law
beyond any possibility for fairminded disagreement'"?
*Woodall*, *supra*, at ___ (slip op., at 4) (quoting *Harrington*,
*supra*, at 103).

The Court of Appeals did not properly apply the defer-
ence it was required to accord the state-court ruling. A
fairminded jurist could readily conclude that the trial
judge's exchange with Juror 638 reflected a "diligent and
thoughtful *voir dire*"; that she considered with care the
juror's testimony; and that she was fair in the exercise of
her "broad discretion" in determining whether the juror
was qualified to serve in this capital case. *Uttecht*, 551
U. S., at 20. Juror 638's answers during *voir dire* were at
least ambiguous as to whether he would be able to give
appropriate consideration to imposing the death penalty.
And as this Court made clear in *Uttecht*, "when there is
ambiguity in the prospective juror's statements," the trial
court is "'entitled to resolve it in favor of the State.'" *Id.*,
at 7 (quoting *Witt*, *supra*, at 434).

The Court of Appeals erred in its assessment of the trial
judge's reformulation of an important part of Juror 638's
questioning. 779 F. 3d, at 372. When excusing the juror
the day after the *voir dire*, the trial judge said that the
prosecution had asked whether the juror "couldn't con-
sider the entire range" of penalties. App. to Pet. for Cert.

139a.  The prosecution in fact asked if the juror was "not absolutely certain whether [he] could realistically consider" the entire range of penalties.  *Id.*, at 132a.  The juror's confirmation that he was "not absolutely certain whether [he] could realistically consider" the death penalty, *ibid.*, was a reasonable basis for the trial judge to conclude that the juror was unable to give that penalty fair consideration.  The trial judge's decision to excuse Juror 638 did not violate clearly established federal law by concluding that Juror 638 was not qualified to serve as a member of this capital jury.  See *Witt, supra*, at 424–426.  And similarly, the Kentucky Supreme Court's ruling that there was no error is not beyond any possibility for fairminded disagreement.

The Court of Appeals noted that the deference toward trial courts recognized in *Uttecht* "was largely premised on the trial judge's ability to 'observe the demeanor of'" the juror.  779 F. 3d, at 373 (quoting 551 U. S., at 17).  It concluded that deference to the trial court here supported habeas relief, because the trial judge's "initial assessment of [the juror's] answers and demeanor" did not lead her to immediately strike Juror 638 for cause.  779 F. 3d, at 373–374.

The Court of Appeals' conclusion conflicts with the meaning and holding of *Uttecht* and with a common-sense understanding of the jury selection process.  Nothing in *Uttecht* limits the trial court to evaluating demeanor alone and not the substance of a juror's response.  And the implicit suggestion that a trial judge is entitled to less deference for having deliberated after her initial ruling is wrong.  In the ordinary case the conclusion should be quite the opposite.  It is true that a trial court's contemporaneous assessment of a juror's demeanor, and its bearing on how to interpret or understand the juror's responses, are entitled to substantial deference; but a trial court ruling is likewise entitled to deference when made after a careful

review of a formal transcript or recording. If the trial judge chooses to reflect and deliberate further, as this trial judge did after the proceedings recessed for the day, that is not to be faulted; it is to be commended.

This is not a case where "the record discloses no basis for a finding of substantial impairment." *Uttecht*, *supra*, at 20. The two federal judges in the majority below might have reached a different conclusion had they been presiding over this *voir dire*. But simple disagreement does not overcome the two layers of deference owed by a federal habeas court in this context.

*      *      *

The Kentucky Supreme Court was not unreasonable in its application of clearly established federal law when it concluded that the exclusion of Juror 638 did not violate the Sixth Amendment. Given this conclusion, there is no need to consider petitioner's further contention that, if there were an error by the trial court in excluding the juror, it should be subject to harmless-error analysis. And this Court does not review the other rulings of the Court of Appeals that are not addressed in this opinion.

As a final matter, this Court again advises the Court of Appeals that the provisions of AEDPA apply with full force even when reviewing a conviction and sentence imposing the death penalty. See, *e.g., Parker* v. *Matthews*, 567 U. S. ___ (2012) (*per curiam*); *Bobby* v. *Dixon*, 565 U. S. ___ (2011) (*per curiam*); *Bobby* v. *Mitts*, 563 U. S. 395 (2011) (*per curiam*); *Bobby* v. *Van Hook*, 558 U. S. 4 (2009) (*per curiam*).

The petition for certiorari and respondent's motion to proceed *in forma pauperis* are granted. The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*