**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JAN 19 2022

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PAUL EUGENE COUSIN, | No. 20-55840 |
| Petitioner-Appellant, | D.C. No. 5:16-cv-00254-CAS-MRW |
| v. | |
| CYNTHIA TAMPKINS, Warden, | MEMORANDUM* |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Christina A. Snyder, District Judge, Presiding

Argued and Submitted November 17, 2021
Pasadena, California

Before: WARDLAW, PARKER,** and HURWITZ, Circuit Judges.
Dissent by Judge PARKER

Paul Cousin appeals the district court's denial of his 28 U.S.C. § 2254

petition for habeas corpus, which asserted ineffective assistance of trial counsel

and actual innocence. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and

---

\*      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

\*\*      The Honorable Barrington D. Parker, Jr., United States Circuit Judge
for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

2253, and we affirm.

"We review de novo the district court's denial of [Cousin's] habeas corpus petition." *Sanders v. Cullen*, 873 F.3d 778, 793 (9th Cir. 2017). Our review is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d). Under AEDPA, we must defer to the last state court's reasoned decision—here, the decision of the Superior Court for the County of Riverside—on any claim that was adjudicated on the merits unless that decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or" (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

To establish ineffective assistance of counsel, Cousin must prove: (1) that his trial counsel's performance was deficient, and (2) that "there is a reasonable probability that, but for counsel's professional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

1. The state court denied relief on Cousin's ineffective assistance of counsel claim solely on prejudice grounds and did not address whether trial counsel's performance was deficient. A state court "need not decide whether counsel's performance was deficient when the claim of ineffectiveness may be rejected for lack of prejudice." *Jackson v. Calderon*, 211 F.3d 1148, 1155 n.3 (9th

2

Cir. 2000); *see also Strickland*, 466 U.S. at 697 ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice."). Under AEDPA's doubly deferential standard, we cannot conclude that fair-minded jurists would uniformly agree that the state court's conclusion that Cousin was not prejudiced by counsel's performance is "lacking in justification." *White v. Wheeler*, 577 U.S. 73, 79 (2015).

The state court reasonably determined that Cousin's statements to the police—that Cousin "didn't rob nobody," that the police won't "find no money on me," and that Rush was the accuser—were "damning" and "contextually out of sync with an innocent explanation of the night's events" because the record does not explain how Cousin would have known that Rush was the alleged victim or that money was stolen when he made those statements. *See Sanchez v. Davis*, 994 F.3d 1129, 1143 (9th Cir. 2021) (finding no prejudice in part because the defendant "made incriminating statements . . . which were admitted in evidence against him"). The state court also reasonably recognized that pursuing a defense based on Kuyateh's prostitution would "not necessarily preclude a robbery" because Cousin did not approve of his girlfriend's prostitution, and thus he may have been motivated to take the money Rush received through the arrangement.

2.      The California Supreme Court's denial of relief on actual innocence grounds did not rest on an unreasonable determination of the facts. Even assuming

this claim is cognizable in federal habeas,[1] Cousin failed to satisfy the

"extraordinarily high" standard required for relief, *Carriger v. Stewart*, 132 F.3d

463, 476 (9th Cir. 1997) (en banc), and "affirmatively prove that he is probably

innocent." *Gimenez v. Ochoa*, 821 F.3d 1136, 1145 (9th Cir. 2016). While the

state court acknowledged that the evidence adduced at the habeas hearing would

have "further eroded" Rush's credibility and "the likelihood of conviction would

be diminished," it also reasonably found that Rush's incriminating statements

"were not undermined" and the evidence "opens avenues of argument for the

[prosecution], as well." Thus, its conclusion that Cousin failed to prove actual

innocence was not objectively unreasonable.

**AFFIRMED.**

---

[1] It is an open question whether actual innocence is a cognizable freestanding claim for federal habeas review. *See McQuiggins v. Perkins*, 569 U.S. 383, 392 (2013).

*Paul Cousin v. Cynthia Tompkins*, No. 20-55840

PARKER, Circuit Judge, dissenting:

I respectfully dissent. Paul Cousin was convicted of robbery under California Penal Code § 211 and served eight years in prison. The conviction was largely based on a 911 report by Cleveland Rush that he had been robbed of $20 by a "45- to 50-year-old black light-complected male armed with a sharp object." On several later occasions, Rush testified under oath that Cousin never robbed him, that no robbery had occurred, and that he had lied in his 911 call. Cousin sought habeas relief, but the state court denied Cousin's petition, concluding that Cousin had not established ineffective assistance of counsel or actual innocence. After summary denials from the California Court of Appeal and the California Supreme Court, Cousin brought a federal habeas petition asserting ineffective assistance of counsel and actual innocence claims, which also were denied.[1] A magistrate judge issued a recommendation to deny relief, which the district court adopted. Cousin appeals.

Because the state court did not address the deficiency prong, we review it *de novo*. *See Poyson v. Ryan*, 879 F.3d 875, 887 (9th Cir. 2018). To establish

---

[1] Ineffective assistance of counsel claims are analyzed under the two prongs of *Strickland v. Washington*: (1) whether counsel's performance fell below an objective standard of reasonableness (the "deficiency prong"), and (2) whether the attorney's inadequate representation prejudiced the defendant (the "prejudice prong"). 466 U.S. 668 (1984).

deficiency, a party must show that counsel's representation fell "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Souley Diallo's representation of Cousin fell well below that standard. Diallo failed interview any witnesses, including Cousin's girlfriend, Kuyateh, who could have testified that she and Cousin were aware that the police were investigating a robbery prior to his arrest. This testimony would have negated statements that Cousin made at the time of his arrest (*see infra* at 7), which were the only evidence of guilt offered by the prosecution beyond the initial 911 call. Additionally, Kuyateh's habeas testimony indicated that she could have provided cousin with an alibi covering the period when the alleged robbery occurred.

Kuyateh's failure to show up for a scheduled meeting with Diallo's investigator does not excuse trial counsel's failure to interview her. After all, she was not a surprise or missing witness; she was the main witness. There was a two-month interval between the alleged "robbery" and the trial, and Diallo knew where Kuyateh lived. Any reasonably diligent attorney would have followed up after the missed meeting. *See Rompilla v. Beard*, 545 U.S. 374, 387 (2005) ("Counsel must explore all avenues leading to facts relevant to the merits of the case."); *see also Howard v. Clark*, 608 F.3d 563, 570-71 (9th Cir. 2010) (holding that trial counsel "could not reasonably have decided to forego an independent investigation of [a crucial] witness who might have provided strong support for [petitioner's] claim of

2

innocence.").

Additionally, trial counsel's trial strategy was unreasonable. Diallo focused the entire defense case on Rush's recantation from the preliminary hearing—that he had called the police so that they could help him get the $20 back that he lent Cousin. This explanation is nonsensical, and Diallo offered the jury no reasonable explanation for why Rush reported a robbery in the first place.

Trial counsel's decision not to put on a single defense witness but instead to rely on the inconsistent statements of an unreliable narrator (Rush) was not a reasonable "strategic" decision because it was not based on an adequate investigation. *See Bemore v. Chappell*, 788 F.3d 1151, 1165 (9th Cir. 2015) ("counsel can hardly be said to have made a strategic choice when s/he has not yet obtained the facts on which a decision could be made.").

Trial counsel assumed that Kuyateh would not be a credible witness because she was a prostitute without ever interviewing her. He similarly assumed that Cousin would be worse off by pursuing the "prostitution angle"—despite the fact that the story provided a plausible motive for Rush's 911 call. These decisions might have been "strategic" if trial counsel had done any preparation, but "[w]hen defense counsel merely believes certain testimony *might* not be helpful, no reasonable basis exists for deciding not to investigate." *Duncan v. Ornoski*, 528 F.3d 1222, 1235 (9th Cir. 2008). In sum, trial counsel "had insufficient facts on

3

which to make any reasonable assumptions or on which to base any reasonable decision as to the appropriate defense or defenses to be offered." *Rios v. Rocha*, 299 F.3d 796, 806 (9th Cir. 2002). A basic investigation would have informed trial counsel and allowed him to present proof that there was no robbery, no victim, no witnesses, no weapon, and no proceeds. Accordingly, I conclude that Cousin has met his burden of showing that Diallo's performance was deficient.

To establish prejudice under the *Strickland* analysis, a party must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Because the state court reached the prejudice prong, we review its analysis under 28 U.S.C. § 2254(d). [2] Under these circumstances, we may not grant habeas relief unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

_____

[2] The "first step" in determining whether to give deference under § 2254(d) is to determine the relevant state-court decision. *See Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir. 2014). Under the "look through" doctrine, this Court looks "to the last reasoned decision" that resolved the claim to determine whether that claim was adjudicated on the merits. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991). Here, the superior court denied Cousin's claims in 2018 in a reasoned decision. The California Court of Appeal and California Supreme Court then summarily denied the same claims. Thus, this Court "looks through" those later summary denials to the superior court's reasoned decision. *See Cannedy v. Adams*, 706 F.3d 1148, 1156 (9th Cir. 2013). Because the superior court denied Cousin's ineffective assistance of counsel claim on prejudice grounds, the prejudice element is subject to § 2254(d). *Porter v. McCollum*, 558 U.S. 30, 39 (2009).

4

the State court proceeding." 28 U.S.C. § 2254(d). I conclude that the state court's decision was based on an unreasonable determination of the facts.

The state court unreasonably failed to grapple with a host of facts presented at the habeas proceeding. Rush, the supposed victim, testified at least nineteen times under oath that he was never robbed—by Cousin or anyone else. In fact, Rush apologized to Cousin on the witness stand for lying about the robbery and for causing his arrest. That should have been the end of the matter. Multiple disinterested witnesses offered testimony at the habeas proceeding that corroborated the prostitution arrangement. Taken together, there was a plethora of evidence that despite the initial 911 call, no robbery ever occurred.

The lower court also unreasonably failed to engage with the fact that Rush's initial report to police about the robbery was pockmarked with inconsistencies. On the 911 call, Rush identified his assailant with only a physical description and no name, despite the fact that he had known Cousin for many years. Rush lied to the 911 dispatcher about his own name, and that he was not where he told the dispatcher he would be when the police arrived. Then, when the police arrested Cousin, Rush asked them not to press charges. Rush testified under oath on at least *nineteen occasions*—seven times during the preliminary hearing and at least twelve times during trial—that he had lied in his 911 call and that Cousin never robbed him. The testimony of multiple disinterested witnesses at the habeas

5

proceeding corroborated Rush's previously untold story about the prostitution arrangement. Because none of these facts were mentioned, much less analyzed, by the state court, it was unreasonable for it to conclude that Cousin had robbed Rush.

In denying habeas relief, the state court made much of what it referred to as Cousin's "damning" statements that it saw as "contextually out of context with an innocent explanation of the night's events." The statements at issue are: (1) that after being detained, Cousin spontaneously said, "I ain't robbed nobody"; (2) that when the officer asked why Cousin mentioned robbery, he replied, "It ain't that hard to figure out"; (3) that Cousin shouted to Kuyateh: "Roosevelt's trying to say that I robbed him" (while the officer had not identified the alleged "victim") ; and (4) that after being searched, Cousin told the officer "you didn't even find no money on me," even though the officer had not mentioned that money was the property allegedly taken.

It is not disputed that, apart from the original 911 call and these statements, there was no other evidence of Cousin's guilt. But no reasonable adjudicator could conclude that this evidence proved beyond a reasonable doubt that Cousin robbed Rush, especially where there was overwhelming evidence to the contrary. In any event, far from "damning," these statements make sense when read alongside Kuyateh's sworn declaration that before Cousin made those statements "the police stopped us and asked me if I made a 911 call." The court therefore unreasonably

6

failed to appreciate that Cousin had already learned that the officers were investigating a robbery before he spoke with them.

Further, the state court unreasonably determined that it was not prejudicial to Cousin that Diallo did not present the prostitution story at trial. Multiple disinterested witnesses offered testimony at the habeas proceeding that corroborated Rush's previously untold story about the prostitution arrangement. The state court unreasonably determined that even if the prostitution story had been presented it would not have changed the outcome because it did not "refute the period of time in which Rush and petitioner were outside of the motel room."

The state court was mistaken. Had the prostitution story been presented to the jury, it would have provided Cousin with proof that he was elsewhere when Rush's 911 call alleged the crime occurred. Moreover, the trial court's discussion of "the period of time in which Rush and petitioner were outside of the motel room" focuses on an irrelevant period of time. The time period to which the court refers (in which Rush and Cousin were outside the motel room when Kuyateh was on her first "date" with a client) was *before* 12:15 a.m. Kuyateh testified that she was with Cousin from 12:15 a.m. to 1:00 a.m. According to Rush's phone call to 911, the "crime" occurred around 12:45 a.m. Consequently, if Kuyateh had testified, the jury would have heard Cousin's alibi for the time at which the crime supposedly occurred. Nevertheless, the court elected to speculate (with no

7

evidentiary support) that—despite the fact that Kuyateh's testimony would have placed Cousin away from the scene at 12:45 am (the time that Rush said the crime occurred during the 911 call)—a robbery may have nevertheless occurred before 12:15 am because Cousin and Rush were "perhaps together" earlier in the evening. In other words, it was unreasonable for the state court to draw factual conclusions based on speculation that a robbery could have occurred at time that differed from the time reported to the police by Rush, the purported victim.

Thus, I conclude that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694; *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc). The government's case against Cousin was essentially nonexistent. As noted, the government's case involved a "robbery" with no victim, no weapon, no proceeds, and no witnesses. Had trial counsel performed at the appropriate level of professional competence in investigating and defending this case, I would have little difficulty concluding that Cousin would have been acquitted. For these reasons, I would hold that Cousin has established that he is entitled to habeas relief on his ineffective assistance of counsel claim, and I would reverse the judgment of the district court and remand with instructions to grant Cousin a writ of habeas corpus.