NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FEB 2 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RONNIE Y. CONRAD,<br><br>          Petitioner-Appellant,<br><br>  v.<br><br>T. FOSS, Warden,<br><br>          Respondent-Appellee. | No.   22-55083<br><br>D.C. No.<br>2:19-cv-07497-PSG-DFM<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted July 12, 2023
Pasadena, California

Before: SANCHEZ and MENDOZA, Circuit Judges, and DONATO,[**] District
Judge.
Concurrence by Judge MENDOZA.

Ronnie Conrad appeals the district court's denial of his petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254. We have jurisdiction under 28 U.S.C.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable James Donato, United States District Judge for the
Northern District of California, sitting by designation.

§§ 1291 & 2253.  Reviewing the district court's order de novo, *Noguera v. Davis*, 5 F.4th 1020, 1034 (9th Cir. 2021), we affirm.

## BACKGROUND

In December 2012, Conrad was arrested for torturing his girlfriend, Tania Garcia, for several hours in a motel room.  After her rescue, Garcia told police officers that Conrad had subjected her to painful and prolonged torture.  Garcia described Conrad holding her on the ground as he methodically seared her arms and inner thighs with a hot clothing iron.  Garcia repeated her statements to medical professionals, who treated her for injuries consistent with her account.

While awaiting trial, Conrad professed his love for Garcia and urged her to recant her testimony.  Garcia promised Conrad she would do so.  After meeting with Conrad's lawyer, Chad Calabria, she retained Chad's father, Donald Calabria, who "promised to accompany her and stand by her if she were called to testify." Because Donald and Chad shared the same law firm, Chad Calabria owed a duty of loyalty to Garcia as well as to his own client, Conrad.  *See United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003).

At the preliminary hearing, Garcia testified that the police officers fabricated her previous statements about Conrad's abuse.  She denied having spoken with Conrad since his arrest, despite recorded phone calls proving otherwise.  Garcia also attempted to take the blame for the narcotics and weapons charges that Conrad

was facing. On cross-examination, however, Garcia revealed that she lacked knowledge of many details concerning the drugs and firearms she claimed belonged to her. The trial court ordered Garcia to appear at a subsequent hearing, but she failed to do so. The court issued a bench warrant for Garcia at the prosecution's request. The prosecution enlisted an investigator who, in the weeks leading up to Conrad's trial, "searched multiple databases, visited several locations and spoke to eight individuals in search of information about Ms. Garcia and a means to contact her." Donald Calabria signed a declaration stating that he did not know of Garcia's whereabouts and "had not heard from her in a couple of months" by the time of Conrad's trial.

At Conrad's trial, the court determined that Garcia was unavailable to testify and allowed the prosecution to introduce her preliminary hearing testimony. The prosecution used Garcia's preliminary hearing testimony to argue that Conrad had "conditioned" and "coached" Garcia into taking the blame for Conrad's crimes. Based on Garcia's statements, photographs of her injuries, and the physical evidence, Conrad was convicted of torture, mayhem, corporal injury, and possession of narcotics and firearms.

On direct appeal, Conrad asserted that Chad Calabria's performance was adversely affected by Donald Calabria's representation of Garcia. In a reasoned decision, the California Court of Appeal rejected his claim. The court stated: "To

3

obtain reversal of a criminal verdict, the defendant must demonstrate that (1) counsel labored under an actual conflict of interest that adversely affected counsel's performance, and (2) absent counsel's deficiencies arising from the conflict, it is reasonably probable that the result of the proceeding would have been different." The state court determined that Donald Calabria's "representation of the victim [Garcia] was extremely limited," "[t]here was no evidence Donald's representation of Ms. Garcia threatened Mr. Calabria's loyalty to defendant," and that "[w]ith the exception of Ms. Garcia's statements in the immediate aftermath of the assault, the victim at all times aligned her interests with defendant."[1] The California Supreme Court summarily denied Conrad's claims on direct appeal and state habeas review.

The district court below denied habeas relief, finding that the state court's "decision was not contrary to clearly established federal law or based on an unreasonable determination of the facts because [Conrad's] trial counsel cannot be said to have 'actively represented conflicting interests.'"

---

[1] The second prong of the court's rule statement, requiring the defendant to show prejudice, is incorrect as a matter of law. Once an actual conflict affecting counsel's performance has been established, prejudice is presumed. *See Cuyler v. Sullivan*, 446 U.S. 335, 349-350 (1980). As we discuss below, however, the court did not apply the erroneous second prong of its stated rule because it found no actual conflict of interest in Chad Calabria's dual representation.

4

**DISCUSSION**

Conrad claims that his trial counsel, Chad Calabria, provided ineffective assistance because Calabria had conflicting interests that undermined his representation of Conrad. The Sixth Amendment guarantees criminal defendants "representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). "To establish a Sixth Amendment violation based on a conflict of interest . . . , the defendant 'must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Noguera*, 5 F.4th at 1035 (quoting *Sullivan*, 446 U.S. at 348). "An 'actual conflict' means 'a conflict of interest that adversely affects counsel's performance,' not simply a 'theoretical division of loyalties.'" *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 171, 172 n.5 (2002)).

"To establish an 'adverse effect' a defendant must show 'that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'" *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017) (citations omitted). "When faced with a defendant's claim that her counsel operated under an actual conflict, the central question that we consider in assessing a conflict's adverse effect is what the advocate found himself compelled to refrain from doing because of the conflict." *Id.* (cleaned up). Where there is an actual conflict of interest—*i.e.*, a conflict of interest that actually

5

affected counsel's performance—prejudice to the defendant is presumed. *Clark v. Chappell*, 936 F.3d 944, 985 (9th Cir. 2019).

Because a state court previously rejected Conrad's claims after adjudicating them on the merits, we review the state court's rulings under the "highly deferential" standard established by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Noguera*, 5 F.4th at 1034 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Under AEDPA, a federal court may grant Conrad's petition only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *accord Noguera*, 5 F.4th at 1034.

Conrad's conflict-of-interest claim is primarily based on a declaration that Garcia made approximately two years after his conviction. In that declaration, Garcia described a never-before-mentioned, eve-of-trial meeting with Chad Calabria. Garcia stated she spoke with Chad because she "wanted to come to Court to testify that [Conrad] had not assaulted [her] in any manner." According to Garcia, "Calabria told [her] that he didn't think [she] should come to court" because "it wouldn't look good for [Conrad]." Further, Calabria "told [her] that if [she had] lied to the police when [Conrad] was arrested [she] could get in trouble."

6

Garcia said she did not go to court "because [she] thought that Chad Calabria [k]new what he was doing and he did not want [her] to come to Court."

We conclude that the state court decision was not contrary to clearly established federal law as determined by the United States Supreme Court. 28 U.S.C. § 2254(d)(1). The California Court of Appeal properly determined that Chad Calabria did not labor under an actual conflict of interest that adversely affected his performance, and as such, any prejudice to Conrad could not be presumed. *See Mickens*, 535 U.S. at 171, 172 n.5; *Sullivan*, 446 U.S. at 348. Any division of loyalties that Chad faced as between Conrad and Garcia was "mere[ly] theoretical." *Mickens*, 535 U.S. at 171, 172 n.5.

Taking Garcia's declaration at face value,[2] it shows that Chad Calabria believed Conrad and Garcia's interests were aligned. Chad allegedly told Garcia that her additional testimony at trial would not help Conrad's defense. That was a reasonable assessment given Garcia's implausible and contradictory statements at the preliminary hearing. Indeed, the prosecution made extensive efforts to secure Garcia's appearance at trial, indicating it believed Garcia's testimony would help *convict* Conrad. And Calabria allegedly advised Garcia that testifying at trial

---

[2] Garcia made her declaration shortly after Chad Calabria died, leaving him unable to either confirm or dispute her account. Nevertheless, Garcia's account of the eve-of-trial meeting is in tension with Donald's sworn declaration that he "had not heard from her in a couple of months."

7

would put her in legal jeopardy. Such advice, if true, would have been sound because testifying at trial could have subjected Garcia to possible criminal charges for her inconsistent statements under oath. Thus, according to Garcia's own declaration, the same course of action, Garcia not testifying, served both Conrad and Garcia's interests.

Nor was the state court decision an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d)(2). The state court reasonably determined that there was no evidence Donald Calabria's limited representation of Garcia threatened Chad Calabria's loyalty to the defendant, and that Garcia's interests aligned with those of Conrad. Conrad has failed to identify any evidence that an actual conflict of interest adversely affected Chad Calabria's performance. As discussed above, Garcia and Conrad's interests were aligned because additional testimony from Garcia at trial was more likely to hurt Conrad's defense than help it.[3]

Finally, the anti-retroactivity rule bars Conrad's conflict-of-interest claim based on Chad Calabria's prosecution by the district attorney's office, which was also prosecuting his client. Generally, "federal habeas corpus petitioners may not

---

[3] Moreover, an unconflicted attorney representing Garcia might properly have advised her that she could be arrested for *not* appearing to testify as the court ordered her to. *See* Cal. Pen. Code § 978.5. Thus, even if Chad indeed told Garcia not to testify, he did so against *Garcia's* interest and to Conrad's *advantage*.

8

avail themselves of new rules of criminal procedure." *Beard v. Banks*, 542 U.S. 406, 408 (2004). A "new rule" is one which "breaks new ground," "imposes a new obligation on the States or the Federal Government," or "was not dictated by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis omitted).

A finding of a conflict of interest based on an attorney's prosecution by the same agency prosecuting his client would create a new rule. Courts have not applied a presumption of prejudice from a conflict of interest outside the context of an attorney's concurrent representation of multiple clients with divergent interests. *See Noguera*, 5 F.4th at 1035-36; *see also Walter-Eze*, 869 F.3d at 905 (our circuit has "noted that *Mickens* explicitly concluded that *Sullivan*'s presumption of prejudice was limited to joint representation, and that any extension of *Sullivan* outside of the joint representation at trial context remained, as far as the jurisprudence of the Supreme Court was concerned, an open question") (cleaned up).

Conrad identifies no applicable exception to the anti-retroactivity rule. His claim is therefore barred.[4]

**AFFIRMED.**

---

[4] In his opening brief, Conrad raised two uncertified issues pursuant to Circuit Rule 22-1(e). This request to expand the certificate of appealability to include these two additional claims is denied.


*Conrad v. Foss*, No. 22-55083

MENDOZA, Circuit Judge, concurring:

I agree that we must affirm the district court's denial of Ronnie Conrad's habeas petition under 28 U.S.C. § 2254. Unlike the majority, I do not think that it was "reasonable" for Mr. Conrad's counsel, Chad Calabria, to determine that Mr. Conrad's and his victim Tania Garcia's interests aligned. If this were, say, de novo review of a decision denying a motion brought under section 2255, I would hold that Mr. Conrad's and Ms. Garcia's interests conflicted, and that conflict adversely affected Mr. Calabria's performance, thus violating Mr. Conrad's Sixth Amendment rights. But the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") controls this appeal, so my hands are tied.

## I

AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *White v. Wheeler*, 577 U.S. 73, 77 (2015) (per curiam) (quoting *Burt v. Titlow*, 571 U.S. 12, 16 (2013)). Under AEDPA, we defer to a state court's denial of habeas relief on the merits unless it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

1

28 U.S.C. § 2254(d). Mr. Conrad's appeal rests on the Supreme Court's decisions in *Cuyler v. Sullivan*, 446 U.S. 335 (1980) and *Mickens v. Taylor*, 535 U.S. 162 (2002). In *Sullivan*, the Court held that a criminal defendant's Sixth Amendment rights are violated when "an actual conflict of interest adversely affected his lawyer's performance." 446 U.S. at 348. And in *Mickens*, the Court clarified that we presume prejudice when a defendant makes such a showing under *Sullivan*. *See* 535 U.S. at 166. In Mr. Conrad's case, the state court applied "a rule different from the governing law set forth in [*Sullivan* and *Mickens*]." *Bell v. Cone*, 535 U.S. 685, 694 (2002). It correctly required that Mr. Conrad demonstrate an actual conflict that adversely affected his counsel's performance, but it incorrectly placed the burden on Mr. Conrad to establish prejudice arising from that conflict. Despite this error, which might have rendered this a section 2254(d)(1) appeal, Mr. Conrad's habeas claim falls under section 2254(d)(2)'s "unreasonable determination of the facts" prong. The state court resolved *Sullivan*'s "actual conflict" requirement, which it recited correctly, determining that no "actual conflict" adversely affected Mr. Calabria's performance because, as a factual matter, Mr. Conrad's and Ms. Garcia's interests "aligned."

When "conducting the § 2254(d)(2) inquiry," "[w]e may not characterize the[] state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.'" *Brumfield v.*

2

*Cain*, 576 U.S. 305, 313–14 (2015) (third alteration in original) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Section 2254(d)(2) "requires that we accord the state trial court substantial deference." *Id.* at 314. If "'reasonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's determination.'" *Wood*, 558 U.S. at 301 (quoting *Rice v. Collins*, 546 U.S. 333, 341–42 (2006)) (cleaned up). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## II

Mr. Conrad challenges the state court's determination under *Sullivan* that there was no conflict of interest between Mr. Conrad and Ms. Garcia, and thus, no Sixth Amendment violation by Mr. Calabria. "Multiple" or "joint representation" of a defendant and his victim can give rise to an "actual conflict of interest," in violation of the Sixth Amendment. *See Mickens*, 535 U.S. at 164, 166–69; *see also id.* at 168 ("[J]oint representation of conflicting interests is inherently suspect." (characterizing *Holloway v. Arkansas*, 435 U.S. 475, 483 (1978))). "There is an actual, relevant conflict of interests if, during the course of the representation, the [two parties'] interests do diverge with respect to a material factual or legal issue or to a course of action." *Sullivan*, 446 U.S. at 356 n.3 (Marshall, J., concurring). An "actual conflict," however, requires more than a "mere theoretical division of

3

loyalties." *Mickens*, 535 U.S. at 171. There must be a conflict that "affected counsel's performance," *id.*, or, put differently, a demonstration "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests," *United States v. Walter-Eze*, 869 F.3d 891, 901 (9th Cir. 2017) (quoting *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005)). This inquiry is highly "fact specific," and "'defined by its impact' on counsel's representation." *Walter-Eze*, 869 F.3d at 901 (quoting *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006)).

## A

The facts in this case give rise to an actual conflict under *Sullivan* and *Mickens*. Mr. Calabria represented Mr. Conrad. And Mr. Calabria's law-firm associate and father, Donald, separately represented Ms. Garcia. Mr. Calabria also gave Ms. Garcia legal advice during trial. The "scope" of Mr. Calabria's duty to Ms. Garcia was therefore "equivalent to the duty of loyalty" he owed Mr. Conrad. *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) ("An attorney has a duty of loyalty not only to his own clients, but also to all of his firm's clients."). Ms. Garcia's statements to the police and subsequent testimony were at the heart of this case. Shortly after Mr. Conrad's arrest in a motel room littered with guns and drugs, Ms. Garcia told investigating officers and hospital staff that Mr. Conrad had

4

tortured her, burning her with a clothes iron and beating her repeatedly with a gun, hair-straightening iron, and toilet plunger, as well as his feet and fists. She later recanted. At Mr. Conrad's preliminary hearing, she denied having told police that Mr. Conrad tortured her, claimed that someone else had beaten her, and stated that she owned the guns and drugs recovered from their shared motel room. Ms. Garcia repeatedly tried to get the charges against Mr. Conrad dropped, going so far as to call the trial judge to "inform the court that everything that's being said is not true," "nothing happened," and "it's all a lie."

Mr. Conrad wanted Ms. Garcia to testify at trial. He maintained that Ms. Garcia's testimony would echo her testimony at the preliminary hearing, exonerating him of his crimes. The prosecution also wanted Ms. Garcia to testify. It hoped to capitalize on inconsistencies in her story, and to paint a portrait of a long-abused woman, coached into taking the fall for Mr. Conrad. For her part, Ms. Garcia seemed inclined to "testify at [Mr. Conrad's] trial consistent with her preliminary hearing testimony," and she asked Mr. Calabria for advice. Mr. Calabria, weighing these difficult considerations, counseled Ms. Garcia against testifying. He told her that, if she testified as expected, "she could be prosecuted for making false statements to law enforcement." And he concluded that "it wouldn't look good for [Mr. Conrad]" if she testified. She took his advice and didn't show.

5

In my opinion, Mr. Calabria "actively represented conflicting interests." *Hovey*, 458 F.3d at 908. Mr. Conrad had a strong and expressed interest in having Ms. Garcia testify on his behalf. By contrast, Ms. Garcia's interest lay in staying silent to avoid perjury and prosecution.[1] Mr. Calabria, confronted by these competing interests, "failed to put on" Ms. Garcia as a witness, *Walter-Eze*, 869 F.3d at 901–02, choosing a strategy that might accommodate *both* parties' interests, rather than solely pursuing the interests of his *actual* client, Mr. Conrad, *cf. Von Moltke v. Gillies*, 332 U.S. 708, 725 (1948) ("[The] right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client."). This conflict is sufficient to demonstrate an adverse effect on Mr. Calabria's performance under our and other circuits' precedent. *See Walter-Eze*, 869 F.3d at 901–02; *Hovey*, 458 F.3d at 908; *United States v. Williams*, 902 F.3d 1328, 1334 (11th Cir. 2018) (reasoning that simultaneous representation of a defendant and prosecution witness posed an actual conflict because counsel was "placed in the equivocal position of having to cross-examine his own client as an adverse witness"); *Castillo v. Estelle*, 504 F.2d 1243, (5th Cir. 1974) (reasoning

---

[1] The majority underscores that it might have been in Ms. Garcia's interest to appear in court (given that the court ordered her to appear) and, thus, Mr. Calabria gave her advice against her own interest and to Mr. Conrad's advantage. Far from revealing an absence of conflict, however, this analysis only cements it: any decision that Mr. Calabria made by representing the accused and his exonerating witness inherently required him to weigh their interests against one another, and to make choices that only *partially* served both yet *completely* served neither.

similarly to the court in *Williams*, albeit in a pre-*Sullivan* case, that co-representation of a defendant and victim engenders a "risk" of "ambivalence" that "no attorney should accept and that no court should countenance"); *see also United States v. McClelland*, 223 F. App'x 742, 743 (9th Cir. 2007) (affirming a grant of habeas relief under section 2255 because an attorney, representing both an exonerating witness and defendant, engendered a conflict that impeded that witness from testifying). Indeed, my conclusion seems all the more appropriate given that it arises under *Sullivan*, where we presume prejudice because "it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests." *Fitzpatrick v. McCormick*, 869 F.2d 1247, 1252 (9th Cir. 1989) (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984) and characterizing claims under *Sullivan*, 446 U.S. at 349–50). Had Mr. Calabria been solely devoted to Mr. Conrad's interests, and refrained from counseling Ms. Garcia not to testify, he would have made very different trial decisions.[2]

---

[2] Although it does not materially affect my analysis, Mr. Calabria's conduct throughout Mr. Conrad's trial was inappropriate, and any similarly situated attorney should re-consider his ability to represent a client ethically and fairly under such circumstances. Two months before entering an appearance on Mr. Conrad's behalf, Mr. Calabria, himself, had been arraigned on criminal forgery charges. Eight days before his appearance, Mr. Calabria was *convicted* in a separate criminal drug case. And after his appearance in Mr. Conrad's case, but before Mr. Conrad's trial, Mr. Calabria faced a civil complaint before the California State Bar and was criminally charged with violating his probation in his drug case. According to the bailiff at Mr. Conrad's trial, Mr. Calabria's behavior

## B

The state court and the majority disagree with my analysis. The state court

dispensed with Mr. Conrad's arguments in short order, reasoning that:

> There was no evidence Donald's representation of Ms. Garcia threatened Mr. Calabria's loyalty to [Mr. Conrad]. With the exception of Ms. Garcia's statements in the immediate aftermath of the assault, the victim at all times aligned her interests with [Mr. Conrad].[4] Defendant has not shown a prejudicial conflict of interest.
>
> [fn.4] In a declaration submitted in support of defendant's motion to reopen . . . , Ms. Garcia stated: she had intended to testify at defendant's trial consistent with her preliminary hearing testimony; but Mr. Calabria told her if she so testified she could be prosecuted for making false statements to law enforcement officers; and as a result of Mr. Calabria's advice, she did not appear at trial; further, Donald, who knew how to contact her, never told her she was needed at trial. The trial court denied the motion to reopen the new trial hearing.

In turn, the majority holds that "Conrad has failed to identify any evidence that an

actual conflict of interest adversely affected Chad Calabria's performance." After

resurrecting the factual record to justify the state court's cursory holdings, the

majority concludes that "Chad Calabria believed Conrad and Garcia's interests

were aligned" and that any "division of loyalties that Chad faced as between

Conrad and Garcia was 'merely theoretical.'" As discussed above, I disagree that

those facts give rise to a finding that Ms. Garcia's and Mr. Conrad's interests

---

was "strange," and he repeatedly appeared to fall asleep during it—his head making "a slow descent towards the counsel table" before "snap[ping] back up" when "a motion" or "an objection was made."

8

aligned, not least because those findings are not reflected in the "last reasoned opinion" on this issue from the California Court of Appeal. *See Wilson v. Sellers*, 584 U.S. --, 138 S. Ct. 1188, 1194 (2018); *see also id.* at 1192 ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

Under AEDPA, however, it appears that our disagreement over these facts is likely sufficient to require deference to the state court's determination. After all, here, "'reasonable minds reviewing the record [] disagree' about the finding in question," and therefore habeas review cannot "supersede" the state court's determination. *Wood*, 558 U.S. at 301 (cleaned up); *see also Harrington*, 562 U.S. at 664 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."). It might be true that "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). But cases like this—which hinge on detailed factual accounts, cursory state-court orders, and reconstructed hypotheses about counsel's litigation strategy—challenge the notion that a state criminal defendant can truly surmount AEDPA's "formidable barrier" to habeas relief. *White*, 577 U.S. at 77.